# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

**KENNARD WARFIELD, JR. and MARY ELLEN WARFIELD,**

          **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　Case No.  2:07-cv-332-FtM-27DNF

**JAMES A. STEWART, TERRILL L. STEWART, JAMES DUDLEY HALL a/k/a JIM HALL, VIP REALTY GROUP, INC., JOHN DOE (1 THROUGH 10),**

          **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration on the following motion filed herein:

> **MOTION:**   **MOTION TO DISMISS (Doc. No. 26)**
>
> **FILED:**   July 3, 2007
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part, and DENIED in part** .

The Defendants, James Dudley Hall ("Hall") and VIP Realty Group, Inc. ("VIP Realty") are requesting that the Court dismiss Count XI against Hall and Count XIV against VIP and Hall for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). The Plaintiffs, Kennard Warfield, Jr. and Mary Ellen Warfield (collectively "Warfields") assert that they have stated a claim in Count XI under the Florida Deceptive and Unfair Trade Practices Act against Hall, and have stated a claim in Count XIV for Breach of Implied/Express Covenant of Good Faith and Fair Dealing against Hall and VIP Realty. An Endorsed Order (Doc. 27) entered by the Honorable James D. Whittemore, United States District Judge referred the Motion to Dismiss (Doc. 26) for a report and recommendation.

**I. Standard for Motion to Dismiss**

In deciding a motion to dismiss, the Court must accept as true all factual allegations in the Complaint. *Hughes v. United States*, 110 F.3d 765, 767 (11th Cir. 1997); *Brown v. Crawford County, Ga.,* 960 F.2d 1002, 1010 (11th Cir. 1992). The Complaint must be viewed and all reasonable inferences must be made in favor of the plaintiff. *Sawinski v. Bill Currie Ford, Inc.*, 866 F.Supp. 1383, 1385 (M.D. Fla. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). A Complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted); *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1022 (11th Cir. 2001) (*en banc*).

## II. Allegations in Civil Complaint

The Warfields brought this action against James A. Stewart, Terrill L. Stewart (collectively, "Stewarts"), James Dudley Hall, VIP Realty Group, Inc. and Does 1 though 10. (Com[1]. p. 4). The property that is the subject matter of the Complaint is located at 1558 San Carlos Bay Drive, Sanibel, Florida. (Com. ¶10). The lot is approximately 68 feet, street to Bay on the West end, and approximately 77 feet, on the East end. (Com. ¶10). The setback from the Bay is 50 feet and the setback from the street center line is 50 feet, which produce a negative construction envelope for development. (Com. ¶10). In 1987, David Felger petitioned the City of Sanibel for an exception to the zoning laws to build the current house on the property. (Com. ¶11). A variance was eventually granted with many restrictions including the property being restricted to residential use and the prevention of any modifications or remodeling to the house. (Com. ¶11).

The Stewarts purchased the property on April 15, 1998. (Com. ¶12). The Stewarts entered into an Exclusive Right of Sale Listing Agreement ("Listing Agreement") with VIP Realty to sell the property in August 2005. (Com. ¶14). The Warfields allege that the Listing Agreement required the Stewarts to disclose all facts that would materially affect the property's value that were not readily observable, and inform the Broker of these material facts. (Com. ¶ 15, 16). The Warfields also allege that the Listing Agreement required VIP Realty to act honestly and fairly, and disclose all material facts that affect the value of the property which were not readily observable. (Com. ¶ 17).

On September 3, 2005, Hall who is a licensed real estate broker, showed the property to the Warfields. (Com. ¶ 5, 18). The Warfields asked Hall if the property had an latent or patent defects that would materially affect the value of the property. (Com. ¶ 19). Hall responded that there were no

---

[1] "Com." refers to the Civil Complaint (Doc. 1).

latent or patent defects that would materially affect the value of the property. (Com. ¶19). The Warfields told Hall that they needed to expand and remodel the house and asked if he foresaw any difficulties with an expansion or remodel plan. (Com. ¶22). Hall responded that neither he nor the sellers could foresee a problem with an expansion or remodel of the house. (Com. ¶23). Hall told the Warfields that he had many other potential buyers for the house and they did not have much time to consider the purchase. (Com. ¶24).

On September 3, 2005, the Warfields executed a Contract for Sale and Purchase for the house, a copy of the Contract for Sale and Purchase is attached as Exhibit B to the Complaint. (Com. ¶26). The purchase price for the house was $1.4 million. (Com. ¶27). In the Contract for Sale and Purchase, the Stewarts promised that there were no facts known to them which materially affected the value of the property that were not readily observable. (Com. ¶34). In the Brokerage Relationship Disclosure signed by Kennard Warfield on September 3, 2005, a copy of which is attached to the Complaint as Exhibit B, VIP Realty promised to deal honestly and fairly and disclose all known facts that would materially affect the value of the property that were not readily observable. (Com. ¶35). Hall provided a Seller's Real Property Disclosure Statement on September 9, 2005, a copy of which is attached to the Complaint as Exhibit C, which provided the following:

> NOTICE TO BUYER AND SELLER:
> In Florida, a Seller is obligated to disclose to a Buyer all known facts that materially affect the value of the property being sold and that are not readily observable. This disclosure statement is designed to assist Seller in complying with the disclosure requirements under Florida law and to assist the Buyer in evaluating the property being considered. This disclosure statement concerns the condition of the real property located at above address. It is not a warranty of any kind by the Seller or any Licensee in this transaction. It is not a substitute for any inspections or warranties the parties may wish to obtain. It is based only upon Seller's knowledge of the property condition. This disclosure is not intended to be a part of any contract for sale and purchase. All parties may refer to this information when they evaluate, market or present Seller's property to prospective Buyers.

(Com. Exhibit C). In the Disclosure Statement, the Sellers disclosed that they were not aware of a variety of problems including settling, sinkholes, drainage, flooding, or zoning violations. (Com. ¶39, 40). The Stewarts disclosed that they were not aware of any zoning restrictions affecting additions or improvements to the property (Com. ¶42).

The closing was held on October 14, 2005. (Com. ¶62). The Warfields hired an architectural firm to remodel the house. (Com. ¶67). In April 2007, the architectural firm notified the Warfields that the house was built with a variance. (Com. ¶ 68). The Warfields notified Hall, and Hall responded by e-mail that he did not know that the home was built with a variance. (Com. ¶69, 70).

### III. Count XI, Unfair and Deceptive Trade Practices of Hall[2]

The Warfields contend that Hall violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla Stat. §501.201 *et seq.* by making representations or omissions which he should have known were false and which induced the Warfields to purchase the house. (Com. ¶182). Hall, as a licensed real estate broker[3] contends that Fla. Stat. §501.212 does not apply to him.

The FDUTPA contains a section which specifically exempts certain persons and entities from its application. *See,* Fla. Stat. §501.212. Section 501.212(6) provides as follows:

> (6) An act or practice involving the sale, lease, rental, or appraisal of real estate by a person licensed, certified, or registered pursuant to chapter 475, which act or practice violates s. 475.42 or s. 475.626.

---

[2] Count XI is also against the Stewarts, however, the Court will focus on the allegations against Hall only.

[3] The Warfields allege that Hall is a duly licensed real estate broker in their Complaint (Com. ¶5).

Fla. Stat. §501.212(6). Real estate brokers are regulated by Fla. Stat. §475.001 *et al*. ("The Legislature deems it necessary in the interest of the public welfare to regulate real estate brokers, sales associates, and schools in this state." Fla. Stat. §475.001). Specifically, §475.42(1)(o), provides as follows:

> (o) A person may not disseminate or cause to be disseminated by any means any false or misleading information for the purpose of offering for sale, or for the purpose of causing or inducing any other person to purchase, lease, or rent, real estate located in the state or for the purpose of causing or inducing any other person to acquire an interest in the title to real estate located in the state.

The Warfields argue that Hall's actions do not specifically violate any section of Fla. Stat. §475.42. However, Fla. Stat. §475.42(1)(o) specifically makes the dissemination of false or misleading information which induces an individual to acquire an interest in real estate a violation. The Warfields are alleging that Hall disseminated false and misleading information which induced them to purchase the house. The violation listed in Fla. Stat. §475.42(1)(o) squarely applies to Hall's alleged actions, and therefore, pursuant to Fla. Stat. §501.212(6), the FDUTPA does not apply to Hall. The Court recommends that Count XI be dismissed against Hall.

**IV**. **Count XIV, Breach of Express or Implied Covenant of Good Faith and Fair Dealing against VIP Realty and Hall**

The Warfields[4] contend that the Brokerage Relationship Disclosure is an agreement between the Warfields, and collectively VIP Realty and Hall and contains an express covenant of good faith and fair dealing to disclose all facts that were not observable. (Com. ¶199). The Warfields allege that the

---

[4] The Court notes that only Ken Warfield signed the Brokerage Relationship Disclosure and the Contract for Sale and Purchase (Com. Exh. B). No issue was raised regarding the lack of the signature of Mary Ellen Warfield.

Brokerage Relationship Disclosure contained a promise from VIP Realty and Hall not to work to the detriment of the Warfields. (Com. ¶200). The Warfields claim that VIP Realty and Hall "evaded" the spirit of the agreement by making false statements or omissions of material fact which induced the Warfields to purchase the house, and by failing to provide a Disclosure statement prior to the Warfields entering into a Contract for Sale and Purchase. (Com. ¶201, 202).

The Brokerage Relationship Disclosure (Attached as Exhibit B to the Complaint, Doc. 1) includes three different types of notices, the first is a Single Agent Notice, the second is a Consent to Transition to Transaction Broker, and the third is a Transaction Broker Notice. (Com., Exh. B). All three of the Notices provide that VIP Realty Group, Inc. and its associates owe a duty of "[d]ealing honestly and fairly;" and "[d]isclosing all known facts that materially affect the value of residential real property and are not readily observable." (Com. Exh. B). Hall is not mentioned in any of the Notices. The three Notices are signed by Ken Warfield and dated September 3, 2005.

VIP Realty and Hall argue that the Brokerage Relationship Disclosure does not constitute a contract or agreement between the Warfields, and Hall and VIP Realty collectively. VIP Realty and Hall assert that Florida Law mandates that they provide these notices to the Warfields, and the notices must set forth the duties of a real estate agent as is required in Fla. Stat. §475.278. VIP Realty and Hall never signed the Brokerage Relationship Disclosure.

Florida Statutes require the real estate licensee to provide the notices given in the Brokerage Relationship Disclosure. Fla. Stat. §275.278(c). The Florida Legislature found that the purpose of the notices are "to eliminate confusion and provide for a better understanding on the part of customers in real estate transactions," and the intent of the Brokerage Relationship Disclosure Act is to provide

that "[d]isclosure requirements for real estate licensees relating to authorized forms of brokerage representation are established. . . " Fla. Stat. §475.272.

Florida law recognizes an implied covenant of good faith and fair dealing in every contract. *Southern Internet Systems, Inc. v. Pritula*, 856 So.2d 1125, (Fla. 4th DCA 2003). "This covenant is intended to protect 'the reasonable expectations of the contracting parties in light of their express agreement.'" *Id.* (citing *Insurance Concepts and Design, Inc. v. Healthplan Services, Inc.,* 785 So.2d 1232, 1234-35 (Fla. 4th DCA 2001). There are two restrictions to causes of action for breach of good faith and fair dealing. *Id.* The first restriction is that the covenant of good faith and fair dealing may not "override" an express term of an agreement, and second a breach of the implied covenant of good faith and fair dealing cannot be maintained unless there is an allegation that an express term of the contract has been breached. *Id*.

To maintain an action for a breach of implied covenant of good faith and fair dealing, the Court must first determine whether a contract exists between the Warfields, and Hall and VIP Realty collectively. In Florida, the elements of a contractual agreement are offer, acceptance and consideration. *Acosta v. The District Board of Trustees of Miami-Dade Community College*, 905 So.2d 226, 229-230 (Fla. 3rd DCA 2005). VIP Realty and Hall contend that there is no mutuality of obligation in the Brokerage Relationship Disclosure. VIP Realty and Hall argue that the Warfields are not required to undertake any action by signing the Brokerage Relationship Disclosure. When both parties are bound by the terms of a contract then there is a mutuality of obligation. *Kinko's v. Payne*, 901 So.2d 354, 356 (Fla. 2nd DCA 2005).

The Warfields argue that their forbearance in accepting another broker was the consideration for signing the Brokerage Relationship Disclosure. They also assert that by listing VIP Realty and Hall

on the Contract for Sale and Purchase as the cooperating broker entitled to compensation, that act constituted a mutuality of obligation for the Brokerage Relationship Disclosure.

Upon first glance, the Court would agree with VIP Realty and Hall that a disclosure statement does not contain the elements of a contract. However, one District Court of Appeals in Florida has found that a Brokerage Relationship Disclosure may constitute an agreement between parties. *Read v. Taylor*, 832 So.2d 219, 223 (Fla. 4th DCA 2002). The Fourth District Court of Appeals was addressing the issue of whether bringing a claim for a breach of contract based upon the disclosure statement was frivolous, and thereby allowing the opposing party to obtain attorney's fees under Fla. Stat. §57.105. *Id.* at 219. The trial court had dismissed the breach of contract claim regarding the Brokerage Relationship Disclosure, and awarded attorney's fees finding the claim frivolous. *Id*. at 219. The District Court of Appeals found that the Brokerage Relationship Disclosure was not a traditional form of contract, yet it did obligate the real estate licensee, and the obligations "were not merely gratuitous." *Id*. Under the Brokerage Relationship Disclosure, the real estate licensee agrees to perform certain services for the buyer, and then the real estate licencee would be entitled to a commission. *Id*. The court determined that "it logically follows" that the buyer was "entitled to expect" the real estate licensee "to perform its obligations, and, if necessary, to enforce its rights under the Disclosure Agreement in an action for breach of contract." *Id*. The Fourth District Court of Appeals held that the claims of the Plaintiff was not "so completely lacking in merit as to warrant an award of fees under section 57.105." *Id*. at 224.

The Court is persuaded by Fourth District Court of Appeals reasoning, especially as it relates to the second Notice signed by Ken Warfield. (Com. Exh. B, p. 2). This Notice contained the following language:

> FLORIDA LAW ALLOWS REAL ESTATE LICENSEES WHO REPRESENT A BUYER OR SELLER AS A SINGE AGENT TO CHANCE FROM A SINGLE AGENT RELATIONSHIP TO A TRANSACTION BROKERAGE RELATIONSHIP IN ORDER FOR THE LICENSEE TO ASSIST BOTH PARTIES IN A REAL ESTATE TRANSACTION BY PROVIDING A LIMITED FORM OF REPRESENTATION TO BOTH THE BUYER AND THE SELLER, THIS CHANGE IN RELATIONSHIP CANNOT OCCUR WITHOUT YOUR PRIOR WRITTEN CONSENT.
>
> As a transaction broker, <u>VIP REALTY GROUP, INC.</u>, and its associates, provides to you a limited form of representation that includes the following duties:

(Com. Exh. B, p. 2). The Notice specifies that VIP Realty Group, Inc. and its associates do represent Ken Warfield, and that VIP Realty Group, Inc. and it associates owe certain duties to Ken Warfield. The Court finds that the Warfields have alleged facts sufficient to withstand a Motion to Dismiss. The Warfields do allege an express breach of the Brokerage Relationship Disclosure of the duty to deal honestly and fairly. A breach of an express term of an agreement is a necessary element of a breach of an implied covenant of good faith and fair dealing. The Court determines that the Warfields did state a cause of action upon which relief may be granted in Count XIV.

### V.  Conclusion

The Court respectfully recommends that Hall and VIP Realty's Motion to Dismiss be granted as to Count XI and that Count XI be dismissed as to Hall. The Court further respectfully recommends that the Motion to Dismiss be denied as to Count XIV.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this __11th__ day of September, 2007.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record