# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

**KENNARD WARFIELD, JR. and MARY ELLEN WARFIELD,**

**Plaintiff,**

**-vs-** **Case No. 2:07-cv-332-FtM-27DNF**

**JAMES A. STEWART, TERRILL L. STEWART, JAMES DUDLEY HALL a/k/a JIM HALL, VIP REALTY GROUP, INC., JOHN DOE (1 THROUGH 10),**

**Defendants.**

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANTS, JAMES A. STEWART AND TERRILL L. STEWART'S MOTION TO DISMISS (Doc. No. 32)** |
| **FILED:** | **July 18, 2007** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

The Defendants, James A. Stewart and Terrill L. Stewart ("Stewarts") are requesting that the Court dismiss Counts I, II, III, IV, V, VI and IX for failure to state a cause of action upon which relief

may be granted. The Plaintiffs, Kennard Warfield, Jr. and Mary Ellen Warfield ("Warfields") assert that they have alleged sufficient facts to support their claims which entitle them to relief. An Endorsed Order (Doc. 37) entered by the Honorable James D. Whittemore, United States District Judge entered on July 26, 2007, referred the Motion to Dismiss (Doc. 32) to this Court for a report and recommendation.

**I. Standard for Motion to Dismiss**

In deciding a motion to dismiss, the Court must accept as true all factual allegations in the Complaint. *Hughes v. United States*, 110 F.3d 765, 767 (11th Cir. 1997); *Brown v. Crawford County, Ga.,* 960 F.2d 1002, 1010 (11th Cir. 1992). The Complaint must be viewed and all reasonable inferences must be made in favor of the plaintiff. *Sawinski v. Bill Currie Ford, Inc.*, 866 F.Supp. 1383, 1385 (M.D. Fla. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). A Complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted); *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1022 (11th Cir. 2001) (*en banc*).

**II. Allegations in Civil Complaint**

The Warfields brought this action against James A. Stewart, Terrill L. Stewart (collectively, "Stewarts"), James Dudley Hall, VIP Realty Group, Inc. and Does 1 though 10. (Com[1]. p. 4). The property that is the subject matter of the Complaint is located at 1558 San Carlos Bay Drive, Sanibel Island, Florida. (Com. ¶10). The lot is approximately 68 feet, street to Bay on the West end, and

[1] "Com." refers to the Civil Complaint (Doc. 1).

approximately 77 feet, on the East end. (Com. ¶10). The setback from the Bay is 50 feet and the setback from the street center line is 50 feet, which produce a negative construction envelope for development. (Com. ¶10). In 1987, David Felger petitioned the City of Sanibel for an exception to the zoning laws to build the current house on the property. (Com. ¶11). A variance was eventually granted with many restrictions including the property being restricted to residential use and the prevention of any modifications or remodeling to the house. (Com. ¶11).

The Stewarts purchased the property on April 15, 1998. (Com. ¶12). The Stewarts entered into an Exclusive Right of Sale Listing Agreement ("Listing Agreement") with VIP Realty to sell the property in August 2005. (Com. ¶14). The Warfields allege that the Listing Agreement required the Stewarts to disclose all facts that would materially affect the property's value that were not readily observable, and inform the Broker of these material facts. (Com. ¶ 15, 16).

On September 3, 2005, Hall who is a licensed real estate broker, showed the property to the Warfields. (Com. ¶ 5, 18). The Warfields asked Hall if the property had any latent or patent defects that would materially affect the value of the property. (Com. ¶ 19). Hall responded that there were no latent or patent defects that would materially affect the value of the property. (Com. ¶19). The Warfields told Hall that they needed to expand and remodel the house and asked if he foresaw any difficulties with an expansion or remodel plan. (Com. ¶22). Hall responded that neither he nor the sellers could foresee a problem with an expansion or remodel of the house. (Com. ¶23). Hall told the Warfields that he had many other potential buyers for the house and they did not have much time to consider the purchase. (Com. ¶24).

On September 3, 2005, the Warfields executed a Contract for Sale and Purchase for the house, a copy of the Contract for Sale and Purchase is attached as Exhibit B to the Complaint. (Com. ¶26).

The purchase price for the house was $1.4 million. (Com. ¶27). In the Contract for Sale and Purchase, the Stewarts promised that there were no facts known to them which materially affected the value of the property that were not readily observable. (Com. ¶34). In the Brokerage Relationship Disclosure signed by Kennard Warfield on September 3, 2005, a copy of which is attached to the Complaint as Exhibit B, VIP Realty promised to deal honestly and fairly and disclose all known facts that would materially affect the value of the property that were not readily observable. (Com. ¶35).

On September 9, 2005, which was after the execution of the Contract for Sale and Purchase, the Stewarts and Hall delivered to the Warfields a "Seller's Real Property Disclosure Statement" which is attached as Exhibit C to the Complaint. (Com. ¶37).

> NOTICE TO BUYER AND SELLER:
>
> In Florida, a Seller is obligated to disclose to a Buyer all known facts that materially affect the value of the property being sold and that are not readily observable. This disclosure statement is designed to assist Seller in complying with the disclosure requirements under Florida law and to assist the Buyer in evaluating the property being considered. This disclosure statement concerns the condition of the real property located at above address. It is not a warranty of any kind by the Seller or any Licensee in this transaction. It is not a substitute for any inspections or warranties the parties may wish to obtain. It is based only upon Seller's knowledge of the property condition. This disclosure is not intended to be a part of any contract for sale and purchase. All parties may refer to this information when they evaluate, market or present Seller's property to prospective Buyers.

(Com. Exhibit C). In the Disclosure Statement, the Sellers disclosed that they were not aware of a variety of problems including settling, sinkholes, drainage, flooding, or zoning violations. (Com. ¶39, 40). In the Disclosure Statement, the Stewarts disclosed that they were not aware of any zoning restrictions affecting additions or improvements to the property (Com. ¶40-44). The Stewarts made other representations in the Disclosure statement regarding the flood hazard area, the base flood

elevation, property being in a special flood hazard area, improvements violating the local flood guidelines, the coastal construction control line, work on the septic tank, and anything else that would materially affect the value of the property. (Com. ¶45-50). The Warfields acknowledged receiving a copy of the Disclosure Statement on September 9, 2005, which was six (6) days after the Contract for Sale and Purchase was executed. (Com. ¶52).

The Stewarts also made representations in a Mold Addendum to Seller's Real Property Disclosure Statement attached as Exhibit C to the Complaint, that they were not aware of any damage to the property due to mold or water. (Com. ¶53-55). This Mold Addendum was provided to the Warfields on September 9, 2005, six (6) days after entered into the Contract for Sale and Purchase. (Com. ¶56).

The Stewarts executed on October 12, 2005, a Seller's Affidavit attached as Exhibit D to the Complaint. (Com. ¶57). In the Seller's Affidavit, the Stewarts made representations to induce the Warfields to purchase the subject property including that the property was free of encumbrances. (Com. ¶58-59). The Seller's Affidavit also contained the representation that the property was free from zoning violations. (Com. ¶60).

The closing was held on October 14, 2005. (Com. ¶62). The Warfields hired an architectural firm to remodel the house. (Com. ¶67). In April 2007, the architectural firm notified the Warfields that the house was built with a variance. (Com. ¶ 68). The Warfields notified Hall, and Hall responded by e-mail that he did not know that the home was built with a variance. (Com. ¶69, 70).

**III. Economic Loss Rule**

The Stewarts assert that the economic loss rule bars the Warfields from recovering for the tort claims alleged in Counts I, II, III, and IV. In Count I, the Warfields allege fraudulent misrepresentation by the Stewarts; in Count II, the Warfields allege fraud in the inducement by the Stewarts; in Count III, the Warfields allege common law fraud against the Stewarts; and, in Count IV, the Warfields allege negligent misrepresentation against the Stewarts. All of these Counts allege that the Stewarts misrepresented or omitted material latent or patent defects in the property which affected the value of the property. The Warfields contend that the Stewarts were under a duty to disclose that the zoning regulations prohibited major remodeling or adding an addition on the property. The Warfields claim to have relied on the Stewarts' misrepresentations or omissions in purchasing the property, and that these alleged misrepresentations or omissions induced the Warfields to purchase the property. The Warfields assert that the Stewarts were in possession of the property since April 1998 and knew or should have known that the statements they made were false regarding the condition of the property.

The Stewarts contend that Counts I, II[2], III, and IV should be dismissed for failure to state a cause of action based upon the economic loss rule. "The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Indemnity Insurance Company of North America v. American Aviation, Inc.*, 891 So.2d 532, 536 (Fla. 2004). The economic loss rule was designed to prevent a party to a contract from "circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Id.* The assumption is that parties to a contract have

---

[2] The Stewarts' Motion to Dismiss is not clear as to whether the Stewarts are raising the economic loss rule as to Count II. Although unclear, the Court will consider the impact of the economic loss rule on Count II.

contemplated the damage for nonperformance and bargained the terms for damage for nonperformance into the contract. *Id*. When a party attempts to recover in tort for a breach of a contractual term, the party is in essence attempting to obtain a better bargain than the one negotiated in the contract. *Id*. Therefore, generally, parties in privity of contract are prohibited from recovering under tort theories for economic damages. *Id*. at 537.

Courts have allowed both a tort action and a contract action in limited circumstances. *Id*. One such circumstance is when the tort is committed independently of the breach of contract. *Id*. A court must determine if the proof for the tort claim is separate and distinct from the breach of contract. *Id*. Certain intentional or negligent acts which are independent from the acts constituting the breach of contract will lie. *Id*. "Fraudulent inducement is an independent tort in that it requires proof of facts separate and district from the breach of contract." *Id*. (citations omitted). Negligent misrepresentation also may not be barred by the economic loss rule. *D & M Jupiter, Inc. v. Friedopfer*, 853 So.2d 485, 488 (Fla. 4th DCA 2003). The court must determine if the alleged fraud is in an act of performance or in a term of the bargain. *Id*. If alleged the fraud relates to the performance of the agreement, then the economic loss rule will limit the parties to their contractual remedies. *Id*. However, if the alleged fraud relates to a misrepresentation which caused the plaintiff to enter into the agreement, then such alleged fraud would be fraud in the inducement, which will not be barred by the economic loss rule. *Id*. at 487-88.

In the case of *Swope v. DiMarco*, 886 So.2d 270, 271 (Fla. 4th DCA 2004), the sellers affirmatively represented that there were no defects that would affect the value of the property. The buyers alleged that the sellers should have known that there were latent defects present. *Id*. Specifically, the sellers should have know that the house flooded during inclement whether, and that

there were structural defects. *Id*. The buyers alleged fraudulent inducement. *Id*. After the buyers moved into the home, they discovered material defects in the property. *Id*. The court held that the claim for fraudulent inducement was not barred by the economic loss rule. *Id*.

In the instant case, the Warfields allege that the misrepresentation that the house was free from any latent or patent defects induced them to enter into the Contract for Sale and Purchase. The key alleged misrepresentation was that the Warfields could remodel or renovate the residence. The breach of contract claim alleges that the Stewarts failed to disclose all latent and patent defects which affected the value of the property. The facts of the instant case are similar to those in the *Swope* case. In both cases, the buyers claim that the sellers knew or should have known of patent and latent defects in the property, but failed to disclose them. This failure induced the buyers into purchasing the property. The court in *Swope* did not dismiss the claim based upon the economic loss rule. For a claim to be dismissed, the Stewarts must show that it appears beyond doubt that Warfields can prove no set of facts that would entitle them to relief. See*, Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted); *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1022 (11th Cir. 2001). (*en banc*). At this point in the litigation, the Stewarts have not met their burden, and therefore, the Court will recommend that the Motion to Dismiss be denied as to Counts I, II, III, and IV.

**IV. Count II, Detrimental Reliance**

The Stewarts assert that Count II must be dismissed for failing to state a cause of action upon which relief may be granted due to the Warfields being unable to claim detrimental reliance upon representations as to land use regulations and zoning, citing *Metropolitan Dade County v. Fountainebleau Gas & Wash, Inc.*, 570 So.2d 1006, 1007 (Fla. 3rd DCA 1990), and *Killearn*

*Properties, Inc. v. Department of Community Affairs*, 623 So.2d 771, 776 (Fla. 1st DCA 1993). The Warfields assert that this argument has been overruled, citing *M/I Schottenstein Homes, Inc. v. Azam*, 813 So.2d 91, 96 (Fla. 2002). In the *M/I Schottenstein Homes* case, the Florida Supreme Court addressed the issue of whether there can be justifiable reliance on a fraudulent misrepresentation if there is information in the public record which contradicts the fraudulent misrepresentation. *Id*. at 94. A court must looks to the facts of the particular situation to determine if the reliance is justified. *Id*. at 94-5. If the information is contained in a recorded chain of title for the property then this information is imputed to the buyers, and reliance on a misrepresentation may not be justified. *Id*. at 95. If, however, the public record is not included in the chain of title, then the Florida Supreme Court held 'that the question of whether a cause of action for fraudulent misrepresentation exists where the putatively misrepresented information is contained in the public record is one of fact that should not be resolved through a motion to dismiss and the use of a bright-line rule of preclusion." *Id.* at 94. In the instant case, there are no allegations that the zoning regulations and land use regulations were a part of the chain of title. Therefore, the issue of fraudulent inducement based upon detrimental reliance on a zoning regulation is a question of fact, not to be determined on a motion to dismiss. The Court respectfully recommends that Motion to Dismiss as to Count II be denied.

**V. Count V, Breach of Contract**

The Stewarts assert that Count V, a claim for breach of contract should be dismissed for failure to state a cause of action. The Stewarts contend that the Contract for Sale and Purchase contains in Paragraph V that "[n]o prior or present agreements or representations shall be binding upon Buyer or Seller unless included in this Contract." The Stewarts argue that any statement made prior to entering

into the Contract for Sale and Purchase are not binding and cannot constitute a breach of contract. The Stewarts also argue that the Warfields failed to plead all of the elements of a breach of contract, specifically their compliance with all of the terms of the contract, the occurrence of all conditions precedent, and damages. The Stewarts failed to cite any case law in support of their contentions.

The Warfields argue that they have alleged the elements for breach of contract and have fulfilled their obligations under the contract. The breach of contract claim alleges that the Stewarts breached their contractual duties by not disclosing all latent and patent defects which materially affect the value of the property. The Contract for Sale and Purchase provides the following: "SELLER DISCLOSURE: There are no facts known to Seller materially affecting the value of the Property which are not readily observable by Buyer or which have not been disclosed to Buyer." (Exh. B to Doc. 1, p. 4). The Court finds no merit in the Stewarts' argument regarding prior or present agreements not applicable to the breach of contract claim.

The elements for an action for breach of contract are: (1) a contract; (2) a breach of the contract; and (3) damages resulting from the breach of contract. *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. 2nd DCA 2006). Parties must also prove performance of their obligations under the contract in order to maintain a cause of action for breach of contract. *Id.* The Stewarts contend that the Warfields failed to show their compliance with the terms of the contract, the occurrence of all conditions precedent, and damages. The Stewarts failed to state how the Warfields failed to comply with the terms of the Contract for Sale and Purchase. The Warfields alleged that they closed on the house and took possession of the residence. It appears that the Warfields have sufficiently alleged compliance with the terms of the Contract for Sale and Purchase. The Stewarts failed to state what conditions precedent were not met. As to damages, the Warfields allege that they were damaged in

the amount of the purchase price. The Court finds that the Warfields have alleged the elements of a breach of contract claim sufficiently to withstand a motion to dismiss. Therefore, the Court respectfully recommends that Motion to Dismiss as to Count V be denied.

### VI. Count VI, Breach of Implied Covenant of Good Faith and Fair Dealing

The Stewarts contend that Count VI fails to state a cause of action for breach of implied covenant of good faith and fair dealing for failing to allege an independent breach of contract claim. The Stewarts claim that the Warfields failed to allege a term of the contract that the Stewarts were obligated to perform.

Florida law recognizes an implied covenant of good faith and fair dealing in every contract. *Southern Internet Systems, Inc. v. Pritula*, 856 So.2d 1125, (Fla. 4th DCA 2003). "This covenant is intended to protect 'the reasonable expectations of the contracting parties in light of their express agreement.'" *Id*. (citing *Insurance Concepts and Design, Inc. v. Healthplan Services, Inc.,* 785 So.2d 1232, 1234-35 (Fla. 4th DCA 2001)). There are two restrictions to causes of action for breach of good faith and fair dealing. *Id.* The first restriction is that the covenant of good faith and fair dealing may not "override" an express term of an agreement, and second a breach of the implied covenant of good faith and fair dealing cannot be maintained unless there is an allegation that an express term of the contract has been breached. *Id*.

The Court determined that the Warfields had stated a cause of action for breach of contract sufficient to survive a motion to dismiss. Therefore, the Warfields may proceed on their claim of a breach of an implied covenant of good faith and fair dealing. The Court respectfully recommends that Motion to Dismiss as to Count VI be denied.

**VII. Count IX for Civil Conspiracy**

The Stewarts contend that Count IX for Civil Conspiracy should be dismissed since an action for civil conspiracy exists only if the basis for the conspiracy is an independent wrong or tort which would constitute a cause of action if the wrong were done by one person, citing *Kent v. Kent*, 431 So.2d 279, 281 (Fla. 5th DCA 1983).

The elements of civil conspiracy are:

> (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to [the] plaintiff as a result of the acts performed pursuant to the conspiracy.

*Olson v. Johnson*, 961 So.2d 356, 359 (Fla. 2nd DCA 2007), and *Walters v. Blankenship*, 931 So.2d 137, 140 (Fla 5th DCA 2006). "Generally an actionable conspiracy requires an actionable underlying tort or wrong." *Walters*, 931 so.2d at 140. The Stewarts assert that the Warfields' tort claims should be dismissed and therefore, the Warfields cannot bring an action for civil conspiracy. The Warfields have alleged actionable torts for fraud, and negligent misrepresentation in Counts I, II, III, and IV, which this Court did find were sufficient to withstand a motion to dismiss. Therefore, the Court respectfully recommends that the Motion to Dismiss as to Count IX be denied.

**VIII. Conclusion**

The Court respectfully recommends that the Motion to Dismiss (Doc. 32) be denied.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this 3rd day of October, 2007.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record