UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KENNARD WARFIELD, JR., ET AL.,

Plaintiffs,

v. Case No. 2:07-cv-332-FtM-33DNF

JAMES A. STEWART, ET AL.,

Defendants.

_______________________________/

**ORDER**

This cause comes before the Court pursuant to Plaintiffs' August 19, 2008, objection (Doc. # 154) to the order of Douglas Frazier, United States Magistrate Judge (Doc. # 153), which denied Plaintiffs' second motion for leave to amend (Doc. # 142.)

For the reasons that follow, this Court sustains Plaintiffs' objection to the Magistrate Judge's order denying Plaintiffs leave to file a second amended complaint. The clerk is directed to file Plaintiffs' second amended complaint (Doc. # 142-2). The pending motions for summary judgment are denied as moot. Plaintiffs' request to obtain additional discovery is granted, and discovery is re-opened for a two month period. After the close of discovery, the parties may resubmit dispositive motions.

## I. Factual Background

### A. Felgers' Acquisition and Sale of the Home

In October of 1987, David Felger purchased a vacant lot in Lee County, Florida. (David Felger Dep. Doc. # 165 at 24:18-19). Felger petitioned the City of Sanibel for an exception from the zoning laws to allow the lot to be used in a manner not in accord with the existing zoning laws. (Id. at 48:4-23). Specifically, he requested and was granted a variance which allowed him to build a single family home on the lot.[1] That home, with the address of 1558 San Carlos Bay Drive, Sanibel Florida 33957, is at the center of the present dispute.

During Felger's deposition, he testified that he sold the home two times: "I remember we had to foreclose on it and get it back and then sell it again." (Id. at 28:7-8). Felger testified that VIP Realty Group, Inc. represented him during the first sale of the property. (Id. at 27:11-25, 29:17-23, 37:5-8). Felger sold the home to Gary Lee and Pamela Lee on September 15, 1993. (Id. at 77:24-25). Pamela Lee divorced Gary Lee, and she changed her name to Pamela Whitney.

**B. Whitney's Sale of the Home to the Stewarts**

[1] While the variance allowed the home to be constructed, it also placed restrictions on the home, such as limiting its size to 2,000 square feet, among other things. (David Felger Dep. Doc. # 165 at 48:13-14).

On April 15, 1998, James Stewart and Terrill Stewart purchased the home from Whitney. (Pamela Whitney Aff. Doc. # 167 at ¶ 2). During their purchase of the home from Whitney, the Stewarts utilized the services of a realtor named Robin Humphrey, who is affiliated with VIP Realty. (James Stewart Dep. Doc. # 166 at 19:13-15). When Whitney sold the home to the Stewarts, Whitney disclosed within a "Seller's Property Disclosure Statement" that she was aware of "zoning, land use or administrative regulations which are in conflict with existing or intended use of the property." (Doc. # 156-8). Whitney further explains in her affidavit:

> Prior to the initiation of the present lawsuit, I was not specifically aware that the house was constructed with a variance which limited the [h]ouse to a maximum enclosed living area of 2,000 square feet. However, I was aware that the lot in question had particular limitations although I did not understand them to be in the form of a variance. I did indicate in box 2F of my disclosure statement that I believed the property was subject to "restrictions affecting additions, improvements, or replacement of the property." I was specifically referring to my belief that any expansion of the house would be limited by permeable coverage limitations as well as its distance from the water.

(Pamela Whitney Aff. Doc. # 167 at ¶ 8).

Both Mr. and Mrs. Stewart signed Whitney's disclosure statement on March 25, 1998. (Id.). However, during his deposition, Mr. Stewart denied that he ever received a written

disclosure from Whitney when he purchased the home. (James Stewart Dep. Doc. # 166 at 20: 17-20).[2]

**C. The Stewarts' Sale of the Home to the Warfields**

In August of 2005, the Stewarts entered into an exclusive right of sale listing agreement with VIP Realty to sell the home. (Id. at 33:9-14). On September 3, 2005, James Dudley Hall, an employee of VIP Realty, showed Plaintiffs the home. (Kennard Warfield Dep. Doc. # 156-2 at 31:12-20). Plaintiffs were interested in the home; however, Plaintiffs felt that the home needed additional bedrooms.[3] Accordingly, during the September 3, 2005, showing, Plaintiffs asked Hall whether it would be possible to build additional rooms onto the home, and Hall responded that he did not think that it would be a problem. When asked at his deposition, "What is it that you told . . . Jim Hall you would need to do?" Mr. Warfield testified: "I told him I would have to remodel and increase the size of the house. And he led me to believe that there would be no problem." (Kennard Warfield Dep. Doc. # 156-2 at 34:14-25, 35:1).

---

[2] Mr. Stewart passed away on August 26, 2008, and Terrill L. Stewart, as Executrix of James A. Stewart's Estate, is substituted as a party to this litigation. (Doc. ## 182, 185).

[3] The home had only two bedrooms, and the Warfields had three children at the time of their purchase of the home.

On that same day, Plaintiffs made an offer to purchase the home from the Stewarts for 1.3 million dollars. (Id. at 33:20-21). Plaintiffs ended up paying the Stewarts 1.4 million dollars for the home.[4] (Id. at 35:13-17). Without consulting any architects, engineers, attorneys, or other professionals, Plaintiffs executed a written agreement in which Plaintiffs agreed to purchase the home from the Stewarts. On October 14, 2005, Plaintiffs closed on the purchase of the home.

At this point, the Court should note that Plaintiffs are no strangers to real estate transactions. Mr. and Mrs. Warfield testified during their respective depositions that they have real estate holdings throughout the eastern United States. (Mary Ellen Warfield Dep. Doc. # 5:11-17, 12:10-14:6). Mr. Warfield is the owner of Warfield Brothers, an interstate agricultural business that owns over 8,000 acres of land in three states and produces over 7,000 acres of crops per year. (Kennard Warfield Dep. Doc. # at 10:16-11:20; Mary Ellen Warfield Dep. Doc. # at 8:2-3).

Further, Mr. Warfield holds a general contractor's license and is one of two shareholders, along with his wife,

[4] There is a factual dispute regarding whether the Stewarts actually accepted the offer for 1.3 million dollars.

in Farm Tech, Inc., a construction company. (Kennard Warfield Dep. Doc. # 164:11-22). Mr. Warfield is also a professional developer, and he has completed between 15 and 20 residential developments ranging from 4 to 1,500 units per development. (Id. at 13:15-25). Further, Mr. Warfield is the managing member of Waverly Woods Development Corporation and Ten Oaks Properties. (Id. at 17:14-25, 18:1-8). Mr. Warfield testified that he maintains a full time attorney on staff, and has at the ready a group of other professionals such as engineers, architects, earth movers, and building consultants. (Id. at 15:1-8, 16:5-10).

Despite his level of sophistication, Mr. Warfield testified that he was relying upon Hall, who received an eighty-four thousand dollar commission, to research the property, including zoning restrictions. (Id. at 38:11-23).

On April 6, 2007, Plaintiffs learned, through architect Edgar Burton, that a planned renovation of the home (the addition of two bedrooms) could be problematic due to the variance and/or restrictions on the property. (Id. at 70:20-25, 74:10-17, 125:3-5). Plaintiffs claim that they would not have purchased the home if Plaintiffs had known that it was built under a variance that limited remodeling and expansion of the home.

## II. Procedural History

### A. Plaintiffs' Complaint

Plaintiffs initiated this action on May 22, 2007, by filing their complaint against the Stewarts, Hall, VIP Realty, and Does 1 through 10. (Doc. # 1).

On December 30, 2007, Plaintiffs filed an amended complaint (Doc. # 78) with the following counts alleged against the following Defendants: count one for fraudulent misrepresentation against the Stewarts; count two for fraudulent inducement against the Stewarts; count three for common law fraud against the Stewarts, the Felgers, Whitney, and Lee; count four for negligent misrepresentation against the Stewarts; count five for breach of contract against the Stewarts; count six for breach of the implied covenant of good faith and fair dealing against the Stewarts; count seven for mistake against the Stewarts; count eight for breach of the implied warranty of fitness for a particular purpose against the Stewarts; count nine for civil conspiracy against the Stewarts; count ten for conversion against the Stewarts; count eleven for unfair and deceptive trade practices against the Stewarts; count twelve for punitive damages against the Stewarts; count thirteen for negligent misrepresentation against Hall; court fourteen for breach of implied or express

covenant of good faith and fair dealing against VIP Realty and Hall; count fifteen for professional negligence against VIP Realty and Hall; count sixteen for contractual indemnity against the Stewarts; count seventeen for failure to disclose and breach of warranty against the Stewarts, the Felgers, Lee, and Whitney. (Doc. # 78).

As this case has progressed, the Felgers and Lee have been voluntarily dismissed from this suit. (Doc. # 141). The remaining Defendants have answered Plaintiffs' complaint. However, Plaintiffs desire to amend their complaint due to newly discovered evidence.

**B. Plaintiffs' Motion to Amend**

During the course of discovery, Plaintiffs have discovered additional evidence that Plaintiffs contend justifies further amendment of the complaint. On June 24, 2008, VIP Realty furnished to Plaintiffs a copy of Whitney's disclosure statement, a document in which Whitney disclosed material facts about the property to the Stewarts. As noted above, the Stewarts signed the disclosure statement.

Because this case is essentially a Johnson v. Davis case concerning whether material facts about the home were not disclosed to Plaintiffs during the sale of the home to Plaintiffs, this Court considers the Whitney disclosure

statement to be a critical document.[5] This Court does not disagree with Plaintiffs' characterization of Whitney's disclosure statement as a "smoking gun."

In addition to Whitney's disclosure statement, Plaintiffs also contend that the Stewarts' deposition testimony reveals that Hall misrepresented to Plaintiffs that the Stewarts rejected Plaintiffs' offer to purchase the home for 1.3 million dollars. In addition, Plaintiffs assert that Hall misrepresented to Plaintiffs the listing price of the home.

On July 10, 2008, Plaintiffs filed their second motion for leave to amend complaint. (Doc. # 142). Plaintiffs' motion for leave to amend contained the following statement, "The Warfields seek to amend their complaint to remove four (4) defendants (i.e., [the] Felgers, Lee, and Whitney) and to streamline the counts against the remaining defendants so as to offer the Stewarts/Hall/VIP greater clarity of the issues." (Doc. # 142 at 1-2).[6]

---

[5] In Johnson v. Davis, 480 So. 2d 625 (Fla. 1985), the Florida Supreme Court articulated that "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." Id. at 629.

[6] The Stewarts, Hall, and VIP Realty filed responses in opposition to Plaintiffs' request to amend their complaint for a second time. (Doc. ## 144, 147). Plaintiffs filed reply memoranda (continued...)

On August 8, 2008, Judge Frazier entered an order denying Plaintiffs' motion for leave to amend. (Doc. # 153). Judge Frazier noted that, rather than "streamlining" the complaint, the proposed amendment would add additional claims against some of the Defendants. (Doc. # 153 at 2). In addition, Judge Frazier noted that the Felgers and Lee were already dismissed from the case, and that an amendment was not necessary to "remove" those Defendants. (Id.) Furthermore, Judge Frazier remarked that Whitney could be removed from the case via voluntarily dismissal by Plaintiffs without amendment to the complaint.

Although Plaintiffs' request for leave to amend was filed within the parameters of the Court's case management deadlines, Judge Frazier determined that the motion was due to be denied based upon undue delay.[7] Specifically, Judge Frazier reasoned:

> The discovery is completed, and the Court would have to allow discovery to be reopened on the new claims filed by the Plaintiffs. Further, the Defendants would again be required to respond to

[6](...continued)
concerning the requested amendment. (Doc. ## 149, 151).

[7] The deadline for motions to amend was July 18, 2008, and Plaintiffs' motion to amend was filed on July 10, 2008. (Doc. ## 135, 142). There is no dispute that Plaintiffs' motion was timely filed.

> the Second Amended Complaint at the same time as preparing dispositive motions to meet the August 29, 2008, deadline. The Court has permitted the Plaintiffs to amend their complaint once, and the Amended Complaint (Doc. # 78) has been the operative complaint since December 30, 2007. If the Court permits the Plaintiffs to file a Second Amended Complaint, the case would be delayed once again, and Defendants would be prejudiced by this delay. Therefore, the Court determines that the Second Motion for Leave to Amend Complaint is due to be denied.

(Doc. # 153 at 3-4).

### C. Plaintiffs' Objection to Judge Frazier's Order

Plaintiffs filed a detailed and persuasive objection to Judge Frazier's order denying leave to amend. Defendants were given an opportunity to file a response to the objection; however, Defendants failed to file a response to the objection. A district court shall consider objections to a magistrate judge's order on nondispositive matters and modify or set aside any portion of the order if it is found to be "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). A finding of fact is clearly erroneous only if the reviewing court is left with a definite and firm conviction that a mistake has been made. See Ford v. Haley, 195 F.3d 603, 617 (11th Cir. 1999).

The Warfields assert that Judge Frazier's order should be overturned because the motion to amend was timely filed, the amendment would prejudice no defendant, and any delay in this

action was caused by VIP Realty and Hall because they tendered a "smoking gun" document after June 24, 2008. The smoking gun document, Whitney's disclosure statement, is signed by the Stewarts evidencing that Whitney informed the Stewarts that there were zoning and land use problems with the home.

**III. <u>Leave to Amend is Granted</u>**

This Court determines that Plaintiffs should have been granted leave to amend because the motion for leave to amend was filed within the Court's own case management and scheduling deadlines and because any "delay" caused by the amendment is the result of VIP Realty's failure to timely produce the Whitney disclosure statement. Plaintiffs correctly identified the significance of the Whitney disclosure document, and this document calls for the dismissal of Whitney as a defendant and allows for the addition of a fraud count against VIP Realty -- the very relief that Plaintiffs request in their motion to amend: "The First Amended Complaint does not contain a fraud claim, nor a claim for punitive damages against VIP/Hall. June 24, 2008 was the first time that Plaintiffs had clear and substantial documentary evidence that VIP had prior knowledge of the restrictions affecting additions, improvements, or replacement of the property, and failed to disclose this information to

the Warfields. This newly discovered evidence clearly supports a fraud/punitive damages claim(s) against VIP/Hall." (Doc. # 154 at 7-8).

In addition, Plaintiffs' contentions regarding VIP and Hall's alleged fraud regarding the price negotiations and the misrepresentation of the listing price should not be omitted from Plaintiffs' complaint.

Judge Frazier's order did not discuss the significance of Whitney's disclosure statement, nor did it address the substance of the additional counts Plaintiffs seek to pursue. This Court will allow Plaintiff's second amended complaint to be filed. In addition, this Court re-opens discovery for a two month period. It should be noted, that the re-opening of discovery is required regardless of this Court's decision to allow amendment of the complaint. The need for such discovery was keenly noted by Plaintiffs in their response to the Stewarts' motion for summary judgment:

> [A] more compelling case for the use of Rule 56(f) can hardly be imagined. As attested to by counsel . . . [the Whitney disclosure] was withheld without any justification despite it being responsive to numerous document requests. It was completely within the control of the Defendants, and unavailable from any other source. At each of their depositions, the Defendants denied that the document existed, and testified that they had no knowledge of any property restrictions. Now that

> the document has been discovered, Whitney has submitted an affidavit which would give it meaning at odds with that urged by the Stewarts.

(Doc. # 172 at 13).

This Court has reviewed the motions for summary judgment pending in this case, and this Court is aware of Plaintiffs' request, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure to take further discovery regarding the Whitney Disclosure. (Doc. # 172-2). This Court agrees that Whitney's disclosure statement triggers Rule 56(f).[8]

Further, to rule on any of the pending motions for summary judgment at this stage, with discovery reopened, would run afoul of Rule 56(c) of the Federal Rules of Civil Procedure, which states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties shall renew their dispositive motions on or before May 1, 2009. The pretrial

[8] Rule 56(f) states, "If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order."

conference shall take place on July 7, 2009, at 10:00 a.m. This case is set for the trial term commencing August 3, 2009.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED**:

(1) Plaintiffs' objections to the order denying Plaintiffs' second motion for leave to amend (Doc. # 154) are sustained.

(2) The Clerk is directed to file Plaintiffs' second amended complaint (Doc. # 142-2), and Defendant Whitney is dismissed via the second amended complaint.

(3) The Stewarts' motion for summary judgment (Doc. # 157) is denied as moot.

(4) Hall and VIP Realty's motion for summary judgment (Doc. # 158) is denied as moot.

(5) The Warfields' motion for summary judgment (Doc. # 159) is denied as moot.

(6) Whitney's motion for summary judgment (Doc. # 160) is denied as moot.

(7) The parties shall renew their dispositive motions on or before May 1, 2009. The pretrial conference shall take place on July 7, 2009, at 10:00 a.m. This case is set for the trial term commencing August 3, 2009.

(8) The Clerk shall enter an amended case management and scheduling order.

**DONE** and **ORDERED** in Ft. Myers, Florida, this 20th day of February 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record