KENNARD WARFIELD, JR., *et al.*,

          Plaintiffs,

v.                    Case No. 2:07-cv-332-FtM-33SPC

JAMES A. STEWART, *et al.*,

          Defendants.
_____/

## ORDER

This cause comes before the Court pursuant to the Warfields' Motion for Partial Summary Judgment (Doc. # 234), which was filed on May 18, 2009, Terrill Stewart's Motion for Summary Judgment (Doc. # 238), which was filed on May 26, 2009, and James Hall and VIP Realty Group, Inc.'s Motion for Summary Judgment (Doc. # 239), which was filed on May 26, 2009. These motions are ripe for this Court's review.

Upon due consideration and for the reasons that follow, this Court denies the motions for summary judgment.

## I.   Factual Background

### A.   Mr. Felgers' Acquisition and Sale of the Home

In October of 1987, David Felger purchased a vacant lot in Lee County, Florida. (Mr. Felger Dep. Doc. # 165 at 24:18-19). Mr. Felger petitioned the City of Sanibel Planning Commission for an exception from the zoning laws to allow the lot to be used in a manner not in accord with the existing

zoning laws. (Id. at 48:4-23). Specifically, he requested and was granted a variance (hereafter the "Variance") that allowed him to build a single family home on the lot. While the Variance allowed the home to be constructed, it limited its enclosed living area to 2,000 square feet (hereafter, the "Restriction"). (Id. at 48:13-14). The Restriction and the parties' respective obligations to disclose the Restriction form the basis of this lawsuit.

During Mr. Felger's deposition, he testified that he sold the home two times: "I remember we had to foreclose on it and get it back and then sell it again." (Id. at 28:7-8). Mr. Felger testified that VIP Realty Group, Inc. represented him during the first sale of the property. (Id. at 27:11-25, 29:17-23, 37:5-8). The second sale of the property by Mr. Felger was to Gary Lee and Pamela Lee on September 15, 1993. (Id. at 77:24-25).[1]

Mr. Felger testified that when he sold the property to the Lees, he recalled that their agent was very aggressive, had a copy of the blueprint of the home as well as a copy of the Variance, and was aware of the Variance. (Id. at 56:1-10; 59:17-21). Ms. Whitney testified that her agent, Barry

---

[1] Pamela Lee subsequently divorced Gary Lee, and she changed her name to Pamela Whitney.

Waddell, was not associated with VIP Realty. (Ms. Whitney Dep.
Doc. # 156-6 at 49:13; 50:2-3).

**B.** **Ms. Whitney's Sale of the Home to the Stewarts**

On April 15, 1998, the Stewarts purchased the home from
Ms. Whitney. (Ms. Whitney Aff. Doc. # 167 at ¶ 2). During
their purchase of the home from Ms. Whitney, the Stewarts
utilized the services of a realtor named Robin Humphrey, who
is affiliated with VIP Realty. (Mr. Stewart Dep. Doc. # 166 at
19:13-15). When Ms. Whitney sold the home to the Stewarts,
she disclosed within a "Seller's Property Disclosure
Statement" that she was aware of "zoning, land use or
administrative regulations which are in conflict with existing
or intended use of the property." (Doc. # 156-8). In the
same form, Ms. Whitney explained, "(1) Lower level was
constructed w/o permits or CO/ (2) Upper deck repairs."
(Id.). Ms. Whitney did not disclose that the property was
limited by the Restriction to 2,000 square feet. Ms. Whitney
explains in her affidavit:

> Prior to the initiation of the present lawsuit, I
> was not specifically aware that the house was
> constructed with a variance which limited the
> [h]ouse to a maximum enclosed living area of 2,000
> square feet. However, I was aware that the lot in
> question had particular limitations although I did
> not understand them to be in the form of a
> variance. I did indicate in box 2F of my
> disclosure statement that I believed the property

-3-

was subject to "restrictions affecting additions, improvements, or replacement of the property." I was specifically referring to my belief that any expansion of the house would be limited by permeable coverage limitations as well as its distance from the water.

(Ms. Whitney Aff. Doc. # 167 at ¶ 8).

Both Mr. and Mrs. Stewart signed Ms. Whitney's disclosure statement on March 25, 1998. (Doc. # 156-8). However, during his deposition, Mr. Stewart denied that he ever received a written disclosure from Ms. Whitney when he purchased the home. (Mr. Stewart Dep. Doc. # 166 at 20:17-20).[2]

Furthermore, Mrs. Stewart filed an affidavit indicating that, when the Stewarts purchased the home, neither Ms. Whitney, as seller, nor any other individual, disclosed that the home was subject to the Restriction. (Mrs. Stewart Aff. Doc. # 156-9 at ¶ 3). Mrs. Stewart states that Ms. Whitney did disclose that portions of the ground floor were constructed in violation of the City of Sanibel's regulations. (Id. at ¶ 4). In an effort to comply with existing law, and with the assistance of Mr. Humphrey, the Stewarts removed the

---

[2] Mr. Stewart passed away on August 26, 2008, and Terrill L. Stewart, as Executrix of James A. Stewart's Estate, is substituted as a party to this litigation. (Doc. ## 182, 185). During Mr. Stewart's deposition, he indicated that he was diagnosed with cancer and was taking several medications. (Mr. Stewart Dep. Doc. # 166 at 12:1-25; 13:1-25; 14:1-18).

portions of the lower floor that were in violation of the City of Sanibel's regulations. (Id. at ¶ 5).

Mrs. Stewart asserts that the Stewarts never considered expanding or adding onto the home and never hired an architect, engineer, or builder during the time they owned the home in an effort to expand the home. (Id. at ¶ 9). Mrs. Stewart contends that the Stewarts never became aware of the Restriction during the time that they owned the home. (Id. at ¶ 8).

## C.   The Stewarts' Sale of the Home to the Warfields

In August of 2005, the Stewarts entered into an exclusive right of sale listing agreement with VIP Realty to sell the home. (Mr. Stewart Dep. Doc. # 166 at 33:9-14). Robin Humphrey, an independent contractor associated with VIP Realty, served as the Stewarts' listing agent. (Mr. Humphrey Dep. Doc. # 156-7 at 88:11-18). On September 3, 2005, James Hall, another independent contractor associated with VIP Realty, showed the Warfields the home. (Mr. Warfield Dep. I Doc. # 156-2 at 31:12-20).[3] The Warfields were interested in

---

[3]   Mr. Warfield has been deposed two times. The first deposition, which this Court will refer to as Mr. Warfield Dep. I, took place on March 17, 2008 (Doc. # 156-2). The second deposition, which this Court will refer to as Mr. Warfield Dep. II, took place on April 17, 2009 (Doc. # 237).

the home; however, they felt that the home needed additional bedrooms.[4] Accordingly, during the September 3, 2005, showing, Mr. Warfield asked Mr. Hall whether it would be possible to build additional rooms onto the home, and Mr. Hall responded that he did not think that it would be a problem. When asked at his deposition, "What is it that you told . . . Jim Hall you would need to do?" Mr. Warfield testified: "I told him I would have to remodel and increase the size of the house. And he led me to believe that there would be no problem." (Mr. Warfield Dep. I Doc. # 156-2 at 34:14-25, 35:1).

## 1.   The Offer to Purchase and Acceptance

On September 3, 2005, the same day as the initial showing of the home, without consulting any architects, engineers, attorneys, or other professionals, the Warfields made an offer to purchase the home from the Stewarts for 1.3 million dollars. (Id. at 33:20-21). The Warfields ended up paying the Stewarts 1.4 million dollars for the home. (Id. at 35:13-17). The Warfields contend that Mr. Hall misrepresented the asking price of the home to Mr. Warfield and that misrepresentation caused the Warfields to bid against themselves when they made

---

[4] The home had only two bedrooms, and the Warfields had three children at the time of their purchase of the home.

an offer on the home.  In addition, the Warfields allege that Mr. Hall represented to the Stewarts that the Warfields' offer was 1.4 million dollars, rather than 1.3 million dollars. Last, the Warfields contend that either Mr. Hall or the Stewarts surreptitiously added the words "as is" into the contract for the purchase of the home without the Warfields' agreement.

During his second deposition, Mr. Warfield testified that Mr. Hall represented that the asking price for the home was 1.7 million dollars. (Mr. Warfield Dep. II Doc. # 237-3 at 125:1-3).  Mr. Stewart testified that the asking price was actually 1.525 million dollars. (Mr. Stewart Dep. Doc. # 166 27:1-9).  The Warfields offered 1.3 million dollars for the home in writing, and the Stewarts purportedly countered at 1.4 million dollars.[5]  Mr. Warfield agreed to pay 1.4 million dollars, but he now contends that the Stewarts accepted the 1.3 million dollars offer and that Mr. Hall unilaterally changed the Warfields' offer to 1.4 million dollars and added the words "as is" to the contract without the Warfields' agreement. (Mr. Warfield Dep. II Doc. # 237-3 at 125:4-18; 139:7-25) However, during his second deposition, Mr. Warfield

_____

[5]  There is a material issue of fact as to whether the Stewarts actually made a counteroffer.

admitted that he did not read the contract in its entirety. (Id. at 140:11-15). Mr. Warfield maintains that the Stewarts' signatures on at least one version of the contract were forged and that the contract was "finagled" and "phony." (Mr. Warfield Dep. II Doc. # 237-3: 91:10-18). Nevertheless, on October 14, 2005, the Warfields closed on the purchase of the home.

With respect to the sale of the property to the Warfields, Mrs. Stewart indicated that the Stewarts "never had any discussions with the Warfields either before or after the sale." (Mrs. Stewart Aff. Doc. # 156-9 at ¶ 10). The Stewarts contend that they did not disclose the Restriction to the Warfields because the Stewarts did not know that the Restriction existed.

Likewise, Mr. Hall and VIP Realty (through its agents) testified that they did not disclose the Restriction because they did not know that the Restriction existed.

## 2. The Warfields' Qualifications

At this point, the Court should note that the Warfields are no strangers to real estate transactions. The Warfields testified during their respective depositions that they have real estate holdings throughout the eastern United States. (Mrs. Warfield Dep. Doc. # 156-4 at 5:11-17; 12:10-14:6). Mr.

Warfield is the owner of Warfield Brothers, an interstate agricultural business that owns over 8,000 acres of land in three states and produces over 7,000 acres of crops per year. (Mr. Warfield Dep. I Doc. # at 10:16-11:20; Mrs. Warfield Dep. Doc. # 156-4 at 8:2-3).

Further, Mr. Warfield holds a general contractor's license and is one of two shareholders, along with Mrs. Warfield, in Farm Tech, Inc., a construction company. (Mr. Warfield Dep. I Doc. # 164:11-22). Mr. Warfield is also a professional developer, and he has completed between 15 and 20 residential developments ranging from 4 to 1,500 units per development. (Id. at 13:15-25). Further, Mr. Warfield is the managing member of Waverly Woods Development Corporation and Ten Oaks Properties. (Id. at 17:14-25, 18:1-8). Mr. Warfield testified that he maintains a full time attorney on staff and has at the ready a group of other professionals such as engineers, architects, earth movers, and building consultants. (Id. at 15:1-8, 16:5-10).

Despite his level of sophistication, Mr. Warfield testified that he was relying upon Mr. Hall to research the property, including zoning restrictions. (Id. at 38:11-23).

Mr. Warfield testified that, on April 6, 2007, the Warfields learned, through architect Edgar Burton, that a

planned renovation of the home (the addition of two bedrooms) could be problematic due to the Variance and/or Restriction. (Id. at 70:20-25, 74:10-17, 125:3-5). It should be noted, however, that during the depositions of both Mr. Burton and the Stewarts' expert witness, David Depew, both testified that a 1,000 square foot addition could reasonably be added to the home. (Burton Dep. Doc. # 162-2 at 37:14-25; 38:1-25; 39:1-25; 40:1-25; 41:1-25; 42:21; 58:14-19); (Depew Dep. Doc. # 169 at 40:9-16). Although the Warfields claim that they would not have purchased the home if they had known of the Restriction, Mr. Warfield testified during his second deposition that the Warfields have not applied for a variance to remodel the home to include the extra bedrooms. (Mr. Warfield Dep. II Doc. # 237-3 at 100:1-21; 103:1-11). Mr. Warfield testified that requesting a variance to build the additional rooms would be too expensive, would take too long, and was too uncertain. (Id.) The Warfields have never requested permission to remodel and, thus, have never been denied permission to remodel.

## II.  **The Warfields' Complaint**

The Warfields initiated this action on May 22, 2007, by filing their complaint against the Stewarts, Mr. Hall, VIP Realty, and Does 1 through 10. (Doc. # 1). Since that time,

Plaintiffs have twice amended, and the operative complaint (Doc. # 199), was filed on February 20, 2009. The operative complaint contains twelve counts: count one for fraudulent inducement against the Stewarts; count two for negligent misrepresentation against the Stewarts; count three for breach of contract against the Stewarts; count four for breach of the implied covenant of good faith and fair dealing against the Stewarts; count five for breach of the Johnson v. Davis duty to disclose against the Stewarts;[6] count six for failure of contract formation against the Stewarts; count seven for fraudulent inducement against Mr. Hall and VIP Realty; count eight for negligent misrepresentation against Mr. Hall and VIP Realty; count nine for breach of contract against Mr. Hall and VIP Realty; count ten for breach of the implied covenant of good faith and fair dealing against Mr. Hall and VIP Realty; count eleven for fraudulent misrepresentation against Mr. Hall and VIP Realty; and count twelve for breach of the Johnson v. Davis duty to disclose against Mr. Hall and VIP Realty. (Doc. # 199).

---

[6] In Johnson v. Davis, 480 So. 2d 625 (Fla. 1985), the Florida Supreme Court articulated that "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." Id. at 629.

All parties have filed motions for summary judgment, which are now ripe for the Court's review.

## III. **Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at

trial. <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004)(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995)(citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor.  <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment.  <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)).  However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only

proper, but required.  <u>Morris v. Ross</u>, 663 F.2d 1032, 1034

(11th Cir. 1981), <u>cert.</u> <u>denied</u>, 456 U.S. 1010 (1982).

**IV.  <u>Analysis</u>**

The Warfields are property developers who purportedly

purchased the home in question for a family vacation home.

They purchased the home without conducting independent

research regarding whether a variance restricted the property.

Had the Warfields evaluated the public records prior to

purchasing the home, they would likely have discovered that

the home is subject to the Restriction.

The Warfields assert that they would not have purchased

the home had they known of the Restriction, and the Warfields

contend that the Stewarts, as seller, and Mr. Hall and VIP

Realty, as brokers, had a duty to disclose the Restriction.

However, the Stewarts, Mr. Hall, and VIP Realty contend that

they did not know that the Restriction existed.

Though the Warfields' complaint contains twelve counts,

they seek summary judgment on counts five, eleven, and twelve

only.  In count five, the Warfields allege that the Stewarts

breached the duty to disclose as specified in <u>Johnson v. Davis</u>

because the Stewarts failed to disclose to the Warfields that

the home is subject to the Restriction.  Count twelve,

asserted against Mr. Hall and VIP Realty, contains the same

Johnson v. Davis failure to disclose allegation.  In count eleven, the Warfields assert that Mr. Hall and VIP fraudulently misrepresented (and inflated) the asking price of the home to the Warfields, causing the Warfields to bid against themselves in connection with the purchase of the home.  In addition, the Warfields allege that Mr. Hall and VIP Realty falsely represented that the Stewarts rejected the Warfields' offer of 1.3 million dollars.

The Stewarts, on the other hand, seek a summary judgment on all counts of the complaint against them (counts one through six).  Likewise, Mr. Hall and VIP Realty seek a summary judgment on all complaint counts against them (counts seven through twelve).

**A.    "Johnson v. Davis" Counts (Counts Five and Twelve)**

In this diversity case, the Court applies the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result.  Tech. Coating Apps., Inc. v. United States Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998).  Furthermore, this Court must apply Florida law in the same manner that the Florida Supreme Court would apply it.  Brown v. Nicholas, 8 F.3d 770, 773 (11th Cir. 1993).

The Florida Supreme Court held in <u>Johnson v. Davis</u>, 480 So. 2d 625 (Fla. 1985), "[W]here the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." <u>Id.</u> at 629. "Such a duty is equally applicable to real estate brokers." <u>Torbron v. Campen</u>, 579 So. 2d 165, 169 (Fla. 5th DCA 1991). Furthermore, "Florida courts have not hesitated to fashion relief in favor of the principal in classic cases of breach of fiduciary duty of the broker, such as where the broker has violated the duty of full disclosure to his principal." <u>Id.</u>

A close evaluation of <u>Johnson v. Davis</u> reveals that it did not create a separate cause of action for "failure to disclose" as asserted by the Warfields, but rather, is a case applying Florida misrepresentation law to a fraudulent property deal. Plaintiffs' "<u>Johnson v. Davis</u>" counts are merely fraud in the inducement and/or negligent misrepresentation counts.

In <u>Johnson v. Davis</u>, the owners of a home were clearly aware of damage to the roof and ceiling of their home, and the defect was not open and obvious. 480 So. 2d at 627. Buyers entered into an executory contract to purchase the home, and

the owners of the home did not disclose the roof and ceiling defects.[7] Id. The buyers paid the deposits and moved into the home. Id. at 626. The buyers thereafter noticed some discoloration on the ceiling and inquired of the sellers about such discoloration. Id. The sellers indicated that there was once a "minor problem" with the roof, that the problem had been resolved, and that no current problems existed. Id. A few days later, after heavy rain, the buyers noticed water gushing into the home. Id.

The buyers filed a complaint alleging breach of contract, fraud, misrepresentation, and seeking recision of the contract. Id. The trial court made no findings of fact but awarded the buyers $26,000 plus interest and awarded the sellers $5,000 plus interest, with each party to bear their own attorney's fees and costs. Id. at 626-27. An appeal followed. Id. at 627. The Third District Court of Appeal found for the buyers and reversed the award of $5,000 to the sellers. Id. In addition, the Third District Court of Appeal awarded the buyers attorney's fees and costs. Id.

On appeal, the Florida Supreme Court affirmed the Third District Court of Appeal's award to the buyers, determining

---

[7] The contract provided for two deposits (one $5,000 deposit and one $26,000 deposit) prior to the closing.

that the sellers made intentional fraudulent misrepresentations of fact about the roof and ceiling that materially affected the value of the home. _Id._ In reaching this decision, the Court articulated the elements of fraudulent misrepresentation in Florida: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." _Id._

The Court further explained that "the doctrine of _caveat emptor_ does not exempt a seller from responsibility for the statements and representations which he makes to induce the buyer to act, when under the circumstances, these amount to fraud in the legal sense." _Id._ In conclusion, the Court ruled, "[W]here the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." _Id._ at 629.

The Florida Supreme Court has expounded upon its ruling in _Johnson v. Davis_ in a number of well-known opinions, particularly in _Gilchrist Timber Co. v. ITT Rayonier_, 696 So. 2d 334 (Fla. 1997). In _Gilchrist_, ITT sold real property to

Gilchrist under the incorrect assumption that the property was zoned for agricultural and residential use. Id. at 336. Unbeknownst to the parties, the property was zoned for preservation, meaning that no development of the property was permitted. Id. Gilchrist attempted to effectuate the re-zoning of the property, and when that measure proved unsuccessful, Gilchrist sued ITT in the United States District Court. Id. A jury found for Gilchrist, but the district court entered a judgment notwithstanding the verdict in favor of ITT. Id. Gilchrist appealed to the Eleventh Circuit, and the Eleventh Circuit certified to the Florida Supreme Court the following question: "Whether a party to a transaction who transmits false information which that parties did not know was false, may be held liable for negligent misrepresentation when the recipient of the information relied on the information's truthfulness, despite the fact that an investigation by the recipient would have revealed the falsity of the information." Id. at 335.

The Florida Supreme Court essentially indicated that a jury should decide the matter and should apply the law of comparative negligence:

> [T]he law appears to be working toward the ultimate conclusion that full disclosure of all material facts must be made whenever elementary fair conduct

demands it. This does not mean, however, that the recipient of an erroneous representation can hide behind the unintentional negligence of the misrepresenter when the recipient is likewise negligent in failing to discover the error. . . Clearly, a recipient of information will not have to investigate every piece of information furnished; a recipient will only be responsible for investigating information that a reasonable person in the position of the recipient would be expected to investigate. For instance, in this case, the buyer purchased 22,000 acres of long[] established timberland with the intent of subdividing the property for residential purposes. Clearly, the seller could legitimately argue comparative negligence if the buyer failed to convey that intent to the seller and failed to verify, prior to the purchase, **the zoning classifications** . . . In our view, under these circumstances, a jury should resolve the factual issue of the degree of negligence for which each party should be found accountable.

Id. at 339 (emphasis added).

The Warfields contend that the Stewarts, Mr. Hall and VIP Realty knew of the Restriction and failed to disclose information about the Restriction to the Warfields. There is a material issue of fact that precludes summary judgment on the Johnson v. Davis claims. The Stewarts repeatedly contend that they were not aware of the Restriction. Nevertheless, they signed Ms. Whitney's disclosure statement including language to the effect that the home was subject to limitations with respect to improvements. Ms. Whitney later testified, in her second deposition that she did not know for

-20-

sure that the home was subject to the Variance and Restriction, but she had a "gut feeling" that it was so encumbered. (Whitney Dep. II Doc. # 227 at 12:7-25; 13:1-25; 14:1-8).

Likewise, VIP Realty, through its respective agents, including Hall, has been involved in almost every real estate transaction involving the property since it was constructed. VIP agent Humphrey was even involved with dealing with the City of Sanibel to bring the home into compliance when the home was initially purchased by the Stewarts. (Humphrey Dep. Doc. # 156-7 at 51:1-25).

A jury, rather than this Court, must determine whether the Stewarts, Mr. Hall, and VIP Realty knew about the Variance and Restriction and failed to disclose the same to the Warfields. Likewise, if the jury determines that the Stewarts, Mr. Hall, or VIP Realty failed to make a disclosure, the jury must consider the Warfields' negligence, if any, for failing to investigate the public records, particularly the zoning laws and the existence of the Variance and the Restriction. In making this factual determination, as specified in Schottenstein Homes, Inc. v. Azam, the jury should consider whether a "mere cursory glace" at the public records or the title search results for the property would

have disclosed the falsity of the misrepresentation. 813 So. 2d 91, 93 (Fla. 2002). In addition, in apportioning fault among the parties, the jury may consider the respective "positions of the parties." Id. at 95.

At least ten of the Warfields' twelve complaint counts are based upon the same "failure to disclose" allegation. Accordingly, it is not necessary to provide a detailed analysis of each count. Under Florida law, the Warfields' complaint allegations are not subject to summary judgment.

Nevertheless, this Court will provide further analysis in an attempt to narrow the issues for trial.

### B.   Remaining Claims Against VIP Realty and Mr. Hall

The Warfields contend that Mr. Hall and VIP Realty (1) failed to disclose the Variance and Restriction despite knowing that the Warfields planned to add on to the home; and (2) falsely represented to the Warfields that the asking price of the home was 1.7 million dollars when the asking price was actually 1.525 million dollars. The Warfields base counts seven through eleven against Mr. Hall and VIP Realty on these core allegations.[8]

---

[8] Count seven is for fraudulent inducement; count eight is for negligent misrepresentation; count nine is for breach of contract; count ten is for breach of the implied covenant

(continued...)

The Court denies the motions for summary judgment regarding counts seven through eleven of the complaint. There is a material issue of fact in dispute as to whether Mr. Hall and VIP Realty knew of the Variance and Restriction. Further, Mr. Hall denies all wrong doing regarding the formation of the contract. He specifically denies that he inflated the asking price of the home to 1.7 million dollars. This Court cannot make a credibility determination regarding who is telling the truth as between Mr. Warfield and Mr. Hall on summary judgment. That determination must be left to the jury.

**C.** **Remaining Failure to Disclose Claims Against the Stewarts**

Counts one through four against the Stewarts allege fraudulent inducement, negligent misrepresentation, breach of contract, and breach of the implied covenant of good faith; however, each claim is based solely on the Stewarts' failure to disclose the Variance and Restriction to the Warfields. As noted above, summary judgment is not appropriate for any of these claims because there is a huge chasm between the

---

[8](...continued)
of good faith and fair dealing; and count eleven is for fraudulent misrepresentation.

parties' factual allegations with respect to these claims, and Florida law requires adjudication by a jury.

In count one, the Warfields contend that the Stewarts fraudulently induced the Warfields into buying the home by failing to disclose that the home was subject to the Variance and Restriction. Because the Stewarts maintain that they had no knowledge of the Variance and Restriction, the Court declines to enter summary judgment with respect to count one. The same analysis applies to the Warfields' negligent misrepresentation claim as asserted in count two. The jury must decide whether the Stewarts were aware of the Variance and Restriction and failed to make adequate disclose to the Warfields. The jury must also assess the Warfields' negligence, if any.

In count three, the Warfields contend that the Stewarts breached the contract for the sale of the home because the Stewarts failed to disclose the Variance and Restriction. Count four, for breach of the implied duty of good faith, hinges upon the same allegation: that the Stewarts failed to disclose the Variance and Restriction. As noted, there is a conflict in the evidence regarding whether the Stewarts were aware of the Variance and Restriction. Accordingly, summary judgment is not appropriate as to counts three and four.

**D.  Failure of Contract Formation (Count Six)**

Count six, alleging failure of contract formation, is distinct from the failure to disclose allegations detailed above.  In count six, the Warfields allege that "as is" language the Warfields did not agree to was inserted into the contract, rendering the contract a nullity.

Even though Mr. Warfield testified that he did not read the entire contract when he signed it, he indicated that he would not have agreed to an "as is" provision. (Mr. Warfield Dep. II Doc. # 237 at 139:15-18; 140:11-15).  There is a factual dispute concerning the formation of the contract.  Mr. Warfield asserts that he was not made aware of the "as is" clause but, during Mr. Hall's second deposition, Mr. Hall testified that he discussed the "as is" clause with Mr. Warfield. (Mr. Hall Dep. II Doc. # 204 at 56:6-25).  Thus, summary judgment on count six is not appropriate.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED**:

(1)  The Warfields' Motion for Partial Summary Judgment (Doc. # 234) is **DENIED**.

(2)  Terrill Stewart's Motion for Summary Judgment (Doc. # 238) is **DENIED**.

(3)  James Hall and VIP Realty Group, Inc.'s Motion for

Summary Judgment (Doc. # 239) is **DENIED.**

(4) The Warfields' Motion for Leave to File a Reply (Doc. # 248) is **DENIED AS MOOT**.

**DONE** and **ORDERED** in Ft. Myers, Florida, this <u>2nd</u> day of July 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel of Record