UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KENNARD WARFIELD, JR., *et al.*,

        Plaintiffs,

v.                            Case No. 2:07-cv-332-FtM-33SPC

JAMES A. STEWART, *et al.*,

        Defendants.
_____/

**ORDER**

This cause is before the Court pursuant to Plaintiffs' Motion in Limine (Doc. # 268), which was filed on July 6, 2009. James D. Hall and VIP Realty Group, Inc. (hereafter the "Realtor Defendants") filed their Response in Opposition to the Motion in Limine (Doc. # 279) on July 20, 2009. At issue is the admissibility of Plaintiffs' real estate experience.

**Analysis**

Plaintiffs are sophisticated real estate investors who testified during their respective depositions that they have real estate holdings throughout the eastern United States. (Mrs. Warfield Dep. Doc. # 156-4 at 5:11-17; 12:10-14:6). Mr. Warfield is the owner of "Warfield Brothers," an interstate agricultural business that owns over 8,000 acres of land in three states and produces over 7,000 acres of crops per year. (Mr. Warfield Dep. I, Doc. # at 10:16-11:20; Mrs. Warfield Dep. Doc. # 156-4 at 8:2-3).

Further, Mr. Warfield holds a general contractor's license and is one of two shareholders, along with Mrs. Warfield, in Farm Tech, Inc., a construction company. (Mr. Warfield Dep. I Doc. # 164:11-22). Mr. Warfield is also a professional developer who has completed between 15 and 20 residential developments that range is size from 4 to 1,500 units per development. (Id. at 13:15-25). Further, Mr. Warfield is the managing member of Waverly Woods Development Corporation and Ten Oaks Properties. (Id. at 17:14-25, 18:1-8). Mr. Warfield testified that he maintains a full time attorney on staff and has at the ready a group of other professionals such as engineers, architects, earth movers, and building consultants. (Id. at 15:1-8, 16:5-10).

On September 3, 2005, Mr. Hall showed Mr. Warfield the home in question, located at 1558 San Carlos Bay Drive (hereafter, the "Home"). Mr. Warfield testified that he asked Mr. Hall whether it would be possible to build additional rooms onto the Home, and Mr. Hall allegedly responded that he did not think that it would be a problem. When asked at his deposition, "What is it that you told . . . Jim Hall you would need to do?" Mr. Warfield testified: "I told him I would have to remodel and increase the size of the house. And he led me

to believe that there would be no problem." (Mr. Warfield Dep. I Doc. # 156-2 at 34:14-25, 35:1).

On September 3, 2005, the same day as the initial showing of the Home, without consulting any architects, engineers, attorneys, or other professionals, Plaintiffs made an offer to purchase the Home from the sellers. (Id. at 33:20-21).[1] Plaintiffs purchased the Home without conducting independent research regarding whether a variance restricted the property.

Plaintiffs assert that they would not have purchased the Home had they known of the restriction, and Plaintiffs contend that the Realtor Defendants knew of the restriction and had a duty to disclose it. Thus, Plaintiffs sue the Realtor Defendants for fraudulent inducement (count 7), negligent misrepresentation (count 8), breach of contract (count nine), breach of the implied covenant of good faith (count ten), fraudulent misrepresentation (count eleven), and breach of the duty to disclose (count twelve). (Doc. # 199).[2]

---

[1] The sellers of the Home, the Stewarts, are no longer a part of this lawsuit.

[2] Although Plaintiffs assert their duty to disclose count separately as count twelve, under the hearing "breach of the Johnson v. Davis duty to disclose," the allegations lodged therein are subsumed by Plaintiffs' fraud in the inducement and/or negligent misrepresentation counts.

Plaintiffs argue that evidence of Plaintiffs' "agricultural business, real estate business, and generally Mr. Warfield's real estate development activities" should be excluded pursuant to Fed.R.Evid. 403. (Doc. # 268 at 9). Plaintiffs argue that this type of evidence is substantially outweighed by the danger of unfair prejudice to Plaintiffs as well as the danger of confusion of the issues, undue delay, and misleading the jury. Plaintiffs contend that evidence of their "sophistication" and knowledge concerning real estate should be bi-furcated in the same manner that the Court handled evidence of the Realtor Defendants' net worth. See (Docs. ## 261, 270) (granting the Realtor Defendant's motion to bifurcate the determination of the amount of punitive damages from the remaining issues).[3]

Furthermore, Plaintiffs assert that evidence of their real estate experience is only relevant to count eight, for negligent misrepresentation. In the alternative, if such evidence is admitted, Plaintiffs request an appropriate limiting instruction.

---

[3]Plaintiffs request a separate proceeding in which evidence of their real estate experience is revealed to the jury only if "the jury finds for Plaintiffs on [the negligent misrepresentation count] and against the Plaintiffs on all fraud-based counts." (Doc. # 268 at 10).

The Realtor Defendants oppose the Motion in Limine, asserting that evidence of Plaintiffs' real estate experience is admissible at trial. Both sides discuss <u>Besett v. Basnett</u>, 389 So.2d 995 (Fla. 1980) to support their divergent opinions.

In <u>Besett</u>, the plaintiffs sued the defendants, property owners and their real estate agent, for fraudulent misrepresentation. 389 So.2d at 996. The plaintiffs alleged that the defendants fraudulently misrepresented facts about real property in an attempt to induce the plaintiffs to purchase the property. The defendants purportedly represented that (1) the land was comprised of 5.5 acres; (2) the roof was new; (3) the lodge, located on the property was successful; and (4) adjacent land was available to for purchase. <u>Id.</u> In actuality, the land was comprised of only 1.44 acres, the lodge on the land generated less income than represented, the roof was old and in disrepair, and there was no adjacent property available for purchase. <u>Id.</u>

The Florida Supreme Court upheld the plaintiff's fraudulent misrepresentation claim, finding that, "a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false

or its falsity is *obvious to him*." Id. at 998 (emphasis added).

The Florida Supreme Court expounded upon its ruling, explaining:

> Although the recipient of a fraudulent misrepresentation is not barred from recovery because he could have discovered its falsity if he had shown his distrust of the maker's honesty by investigating its truth, he is nonetheless required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.

Id. at 997 (citing Restatement (Second) of Torts (1976) § 541).

In the present case, the Realtor Defendants contend that "a person's senses [are] unique to each individual and that a person's life experiences and knowledge are extremely pertinent to a determination of whether 'the falsity of the representation would have been patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" (Doc. # 279 at 8)(citing Besett, 389 So.2d at 997).

This Court finds the arguments advanced by the Realtor Defendants to be persuasive. The Court draws from the Florida

Supreme Court's analogy to the horseman, adapted from Section 541 of the Restatement of Torts:

> Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus, a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has no experience with horses.

Besett, 389 So.2d at 997 (citing Restatement (Second) of Torts (1976) § 541). The Court will not depart from the Florida Supreme Court's recognition that decisions to purchase land are not made in a vacuum, and that a purchaser's degree of skill and knowledge affects the reasonableness of reliance upon a misrepresentation.

Thus, the inquiry is a subjective one, as in the analogy of the horseman, and Plaintiffs' real estate experience is highly relevant to whether Plaintiffs were justified in relying upon the alleged misrepresentations of the Realtor Defendants. Plaintiffs may well be prejudiced by the jury's knowledge of their real estate experience; however, this is not unfair prejudice because such evidence is vital to the jury's determination of whether Plaintiffs' justifiably relied

upon the Realtor Defendants' alleged misrepresentations, especially if the restriction on the size of the Home was within the public records.[4]

This Court will allow the jury to hear about Plaintiffs' real estate experience, and this Court will consider an appropriate limiting instruction to be read to the jury if one is jointly tendered by the parties in a timely manner.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED**:

Plaintiffs' Motion in Limine (Doc. # 268) is **DENIED IN PART**. Evidence of Plaintiffs' real estate experience will not be excluded at trial.

**DONE** and **ORDERED** in Ft. Myers, Florida, this 2nd day of August 2009.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

---

[4] Incidentally, this Court agrees with the Florida Supreme Court's remark that "[t]he recording acts are not intended as a protection for fraudulent liars." Besett, 389 So.2d at 997 (citing Restatement (Second) of Torts (1976) § 540).