UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KENNARD WARFIELD, JR., ET AL.,

        Plaintiffs,
v.                     Case No. 2:07-cv-332-FTM-33SPC

JAMES DUDLEY HALL, ET AL.,

        Defendants.
_____/

**ORDER**

This cause comes before the Court pursuant to Plaintiffs' motion for a new trial (Doc. # 358), filed on August 26, 2009. Defendants filed a response in opposition to motion for a new trial on September 10, 2009. (Doc. # 366). On September 14, 2009, Plaintiffs filed a motion for leave to file a reply in support of the motion for a new trial (Doc. # 367), which is also ripe for the Court's review. (Doc. # 368).

For the reasons that follow, the Court will deny Plaintiffs' motion for a new trial and Plaintiffs' motion for leave to file a reply.

**I. Background**

On May 22, 2007, Plaintiffs, Kennard and Mary Ellen Warfiled, filed suit against James A. Stewart, Terrill L. Stewart, James Dudley Hall, VIP Realty Group, Inc., Pamela Whitney, David Felger, Georgia Felger, Gary A. Lee, and "Does" 1 through 10. (Doc. # 1). After vigorous motion practice,

various settlements, and multiple complaint amendments, Plaintiffs narrowed their claims down to breach of contract, breach of the implied covenant of good faith and fair dealing, tort claims for misrepresentation, fraudulent misrepresentation, negligent misrepresentation and breach of the Johnson v. Davis duty to disclose material facts in the sale of residential real estate, asserted against VIP Realty Group, Inc. and James Dudley Hall.[1] (Doc. # 199). The claims arose from Plaintiffs' purchase of a home located on Sanibel Island in Lee County, Florida at 1558 San Carlos Bay Drive, Sanibel, Florida 33957.

Among other things, Plaintiffs alleged that Defendants, as realtors, violated their duties to deal honestly and fairly, to use skill, care, and diligence in the transaction, to disclose all known facts that materially effect the value of the property and not to work to represent one party against the interest of the other. Plaintiffs also alleged that Defendants made false or misleading statements (or omitted material facts) in an effort to sell residential property to

---

[1] In Johnson v. Davis, the Florida Supreme Court held, "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." 480 So.2d 625, 629 (Fla. 1985). The same duty of disclosure applies to realtors.

2

Plaintiffs, including inflating the asking price of the home. Plaintiffs argued that Defendants knew that the home was restricted to 2,000 feet by a variance (hereafter, the "Restriction") and failed to disclose the Restriction to Plaintiffs. Plaintiffs also argued that Defendants were aware of a "Seller's Property Disclosure Statement" authored by former owner Pamela Whitney (the "Whitney Disclosure"), and failed to disclose the information on the Whitney Disclosure to Plaintiffs.

Significantly, Ms. Whitney disclosed that she was aware of "zoning, land use or administrative regulations which are in conflict with existing or intended use of the property." (Doc. # 156-8). It is not disputed that Defendants did not advise Plaintiffs that the home was subject to the Restriction.

A jury tried the case from August 5 to August 12, 2009. The jury returned a verdict in favor of Defendants and against Plaintiffs, and the Court entered its judgment in Defendants' favor on September 1, 2009. (Doc. # 360). Plaintiffs now move for a new trial pursuant to Rules 59 of the Federal Rules of Civil Procedure.

## II. **Motion for a New Trial**

Rule 59 of the Federal Rules of Civil Procedure does not

list all of the grounds for a new trial but, instead, generally provides that a new trial may be granted "on all or some of the issues . . . to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in a suit in equity in federal court." Id.

The Supreme Court noted that a party may seek a new trial on grounds that "the verdict is against the weight of the evidence, that damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940).

By their present motion, Plaintiffs seek a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, arguing that the jury's verdict is against the "overwhelming" weight of the evidence. Specifically, Plaintiffs argue that: (1) Plaintiffs established that Defendants failed to make required disclosures under Johnson v. Davis and established that Defendants breached their duties under the Transaction Brokerage Agreement; (2) Defense witnesses Hall and Humphrey should not have been credited by the jury; (3) this Court gave erroneous jury instructions; and (4) the jury handed down an

4

inconsistent verdict. The Court will address these issues and others in determining whether a new trial is warranted in this case.

   A.   **Weight of the Evidence**

      1.   **Legal Standard**

Plaintiffs assert that the jury's verdict in favor of Defendants is contrary to the overwhelming weight of the evidence in the case. In considering Plaintiffs' contentions regarding the weight of the evidence presented at trial, this Court is mindful of the Eleventh Circuit's warning that "[t]he trial judge's discretion to set aside a jury verdict based on the great weight of the evidence is very narrow" and is limited to "protect[ing] against manifest injustice in the jury's verdict." Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984).

The Eleventh Circuit explained in Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183 (11th Cir. 2001):

> A judge should grant a new trial when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. . . . Because it is critical that a judge does not merely substitute h[er] judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great--not merely the greater--weight of the evidence.

5

Id. at 1186 (internal citations omitted). Further, the Eleventh Circuit has noted, "When a new trial is granted on the basis that the verdict is against the weight of the evidence our review is particularly stringent to protect the litigant's right to a jury trial." Hewitt, 732 F.2d at 1556.

Keeping this high standard in mind, this Court will evaluate Plaintiffs' motion for a new trial concerning the weight of the evidence.

### 2. **Johnson v. Davis Duty to Disclose**

As to Plaintiffs' Johnson v. Davis failure to disclose claim, the jury answered "No" on the verdict form to the pivotal question: "Do you find by a preponderance of the evidence that one or more of the Defendants knew of facts materially affecting the value of the Property at the time it was sold to the Plaintiffs." (Doc. # 348 at 5). Because the jury answered "No" to this question, the jury did not answer other questions concerning the elements of Plaintiffs' Johnson v. Davis failure to disclose claim against Defendants.

Plaintiffs contend that the jury's aforementioned finding concerning Defendants' duty to disclose was against the overwhelming weight of the evidence. Citing trial testimony from Mr. Hall and Mr. Humphrey, Plaintiffs argue that Defendants "admitted that they did not disclose to Plaintiffs

6

the existence of the Restriction or the Whitney Disclosure."
(Doc. # 358 at 6)(citing Doc. # 337 at 22:8-15, 135:10-136:5).

Defendants counter that "there was substantial evidence to show that the Realtor Defendants did not know of the Variance at the time the House was sold to Plaintiffs." (Doc. # 366 at 4). Defendants' argument concerning lack of knowledge about the Restriction is supported by the evidence offered at trial. Mr Felger sold the home to Ms. Whitney, and Ms. Whitney testified, via deposition, that she did not learn about the Restriction until after she was served with process in the present lawsuit. (Doc. # 353 at 13:21-25, 16:16-21). Ms. Whitney sold the home to the Stewarts in 1998. The Stewarts also testified that they did not know about the Restriction until they were served with process in this lawsuit. (Doc. # 353 at 36:18-38:3, 63:18-64:2).

Mrs. Stewart testified that the Stewarts never looked into adding on to the house because they were happy with its size. (Doc. # 353 at 63:20-64:2, 67:4-9). Mr. Humphrey testified that he listed the Stewarts' home for sale in September of 2005, and at no material time did the Stewarts know that the home was subject to the Restriction. (Doc. # 353 at 86:5-21). Mr. Hall showed the home to Plaintiffs on September 3, 2005. During the showing, Mr. Hall suggested

7

that Plaintiffs consult with a City Planner or architect to see what improvements could be made to the home. (Doc. # 342 at 18:8-19:24).

Mr. Hall testified that, when Plaintiffs purchased the home, he was not aware of any restrictions on expanding the home other than the general restrictions imposed by Sanibel's zoning and building codes. (Doc. # 337 at 220:1-19). Mr. Hall testified that he does not give advice to his clients concerning governmental codes and regulations because it is not his area of expertise. (Doc. # 337 at 220:20-222:160). Real Estate expert Andy Gray testified that it is not the standard in the real estate industry for realtors, such as Mr. Hall, to provide specific advice to clients about land use plans, zoning restrictions, and other governmental requirements. (Doc. # 341 at 19:18-20:3, 28:24-29:5).

Although Mr. Humphrey had possession of the Whitney Disclosure at relevant times, this does not mean that he was aware of the Restriction. The specific variance referred to herein as the "Restriction" is not mentioned in the Whitney Disclosure, and Ms. Whitney testified that she did not know about the Restriction until the present lawsuit was filed. (Doc. # 353 at 16:16-21).

Further, the Stewarts did not interpret the Whitney

8

Disclosure as disclosing the Restriction relevant to the present suit. Rather, Mrs. Stewart testified that the Whitney Disclosure's reference to "zoning restrictions" concerned an illegal ground-floor build-out. On their Disclosure Statement to Plaintiffs in 2005, in connection with the sale of the home, the Stewarts answered "No" on the question of whether they were "aware of any zoning restrictions effecting additions, improvements or replacement of the Property." The Stewarts had removed the illegal ground-floor build-out of the home and, therefore, did not believe that there were any restrictions on the property at the time of the sale. (Doc. # 353 at 73:13-74:13).

The jury's determination in favor of Defendants on the Johnson v. Davis failure to disclose claim is also supported by the undisputed fact that, in the three and one half years since Plaintiffs purchased the home, Plaintiffs never took the necessary steps to seek a variance to allow them to add on to the home. (Doc. # 335 at 161:11-17; Doc. # 350 at 45:9-14). Land planning expert David Depew testified, "I believe the unique circumstances that would apply and be able to justify a variance of this particular parcel, are, indeed, existing on this property and I believe that a request for a variance would be successful." (Doc. # 336 at 74:17-21).

9

In addition, Plaintiffs' architect, Edgar Burton, testified that he could come "close" to designing a home that fit Plaintiffs' specifications and that he would have proceeded with the design for the home improvements if only he had been instructed to do so by Plaintiffs. (Doc. # 336 at 149:3-18).

Thus, the Court finds that the jury's verdict in Defendants' favor on the Johnson v. Davis failure to disclose claim was supported by the great weight of the evidence and declines to grant a new trial on this basis.

3. **Breach of Contract**

Plaintiffs also contend that the jury's verdict on Plaintiffs' breach of contract claim in Defendants' favor was made against the overwhelming weight of the evidence. Specifically, Plaintiffs argue that Defendants breached their duties, under the Transaction Brokerage Agreement, to disclose all known material facts, to "use skill, care, and diligence in the transaction" and to "deal honestly and fairly" with the Plaintiffs. (Doc. # 26 at 9-10). Notably, Plaintiffs claim that Mr. Hall improperly inflated the asking price of the home by $125,000.

This Court has already exhaustively discussed Defendants' duty to disclose material facts about the home to Plaintiffs,

and has upheld the jury's verdict as to Defendants' duty to disclose. The Court also finds that the jury's verdict concerning breach of contract was supported by the great weight of the evidence. It is undisputed that the Stewarts' asking price for the home was $1,525,000. Prior to trial, Mr. Hall testified in two depositions that he told Plaintiffs that the asking price for the home was $1,700,000. (Doc. # 342 at 20:20-21:1). During the trial, Mr. Hall clarified that he was simply mistaken when he offered prior deposition testimony:

> Basically, I made a mistake. It was two years after the whole process, and I honestly think I got confused between that and the more recent happening of the offer that we had had at a million seven fifty, but when the property was placed in the Multiple Listing Service before closing on a public website, it was listed at one five two five. So if I was going to inflate an asking price, I certainly wouldn't have then put it in the public records at a million five twenty-five. So there would be no reason for me to inflate an asking price. It would actually be a disadvantage for me to do that.

(Doc. # 342 at 21:5-15).

Mr. Hall clearly testified at trial that he informed Plaintiffs that the asking price for the house was $1,525,000, the amount on the MLS listing. (Doc. # 342 at 20:13-19).

It is apparent that Mr. Hall made a mistake in his deposition testimony, but the Court does not agree with Plaintiffs' argument that "the jury can only have found that

11

Hall acted either intentionally or erroneously. Whatever the jury's conclusion, the evidence proved a breach of the Transaction Brokerage Agreement." (Doc. # 358 at 14).

The jury credited Mr. Hall's explanation, and there is no reason for this Court to hold a new trial simply because the jury credited one witness' testimony over another witness' testimony.

### B.  Credibility of Mr. Hall and Mr. Humphrey

Plaintiffs contend that "the verdict improperly ignores Defendants' lack of credibility." (Doc. # 358 at 16). Plaintiffs argue that Mr. Hall and Mr. Humphrey offered inconsistent testimony and also carried on an inappropriate conversation during a break in Mr. Humphrey's testimony violating the Court's oral sequestration order.

As noted above, the Court agrees with Plaintiffs that Mr. Hall's deposition testimony was not entirely consistent with his trial testimony. In addition, this Court agrees with Plaintiffs that Mr. Humphrey waffled about his conversation with Mr. Hall during a break in his testimony.

Initially, Mr. Humphrey denied that he spoke with Mr. Hall during a break in testimony. Then, he admitted that he did, in fact, speak with Mr. Hall about the timing of the Whitney Disclosure. (Doc. # 337 at 88:3-89:14).

The Court would be within its sound discretion to grant a new trial on the basis of Mr. Hall and Mr. Humphrey's violation of the Court's sequestration order. However, upon due consideration of the matter, the Court declines to require a new trial. Plaintiffs' counsel had the opportunity to question Mr. Humphrey in front of the jury concerning the out of court conversation. (Doc. # 337 at 88:3-89:3). Mr. Humphrey testified that his conversation with Mr. Hall would not cause him to alter or recant his testimony at trial or in previous depositions. (Doc. # 337 at 89:11-14).

During the trial, Plaintiffs did not move for a mistrial or a curative instruction concerning the violation of the Court's sequestration order. The Court verbally chastised Mr. Hall and Mr. Humphrey concerning their conduct. Upon due consideration, the Court declines to grant a new trial on the basis of the conversation between Mr. Hall and Mr. Humphrey.

As for other inconsistent statements, the Court finds that the jury was within its province to credit the testimony of Mr. Hall and Mr. Humphrey. As stated in J&H Auto Trim Co. v. Bellefonte Ins. Co., 677 F.2d 1365, 1373 (11th Cir. 1982), "Although others might have accorded little or no weight to the witness' testimony under such circumstances, this jury found it to be credible. That is a jury's function. The

verdict as to those issues was not against the weight of the evidence."

This Court is not permitted to substitute its own credibility determinations for those made by the jury. Redd v. City of Phenix City, Ala., 934 F.2d 1211 (11th Cir. 1991).

Further, under this Court's instructions to the jury, the jury was within its province to determine that "a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately." (Doc. # 347 at 5). If the jury believed that Mr. Humphrey or Mr. Hall made a misstatement, it acted within its right in concluding that the misstatement was "simply an innocent lapse of memory" or concerned "only an unimportant detail." (Doc. # 347 at 5).

After due consideration of Plaintiffs' arguments, the Court determines that credibility issues and inconsistent statements concerning Mr. Hall and Mr. Humphrey do not warrant a new trial.

**C. Jury Instructions Concerning Agency**

Plaintiffs contend that a new trial is warranted based upon this Court's instructions to the jury. Plaintiffs argue that the Court erred when it declined to instruct the jury on

14

Florida Statute Section 475.01, et seq., concerning the regulation of real estate brokers. "Specifically, Plaintiffs requested that the jury be instructed that pursuant to F.S.A. § 475.01, for purposes of discharging [his] duties, Humphrey was to be considered an employee of VIP." (Doc. # 358 at 20).

Defendants counter that they never argued that Mr. Humphrey was anything other than an employee of VIP, and Defendants' real estate expert, Andy Gray, testified that VIP was liable for the actions of its licensees, such as Mr. Humphrey. (Doc. # 341 at 50:14-51-2). Mr. Hall offered similar testimony. (Doc. # 337 at 129:20-130:19, 162:1-13).

Concerning the Court's instructions to the jury, the Eleventh Circuit has noted:

> So long as the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instructions. On appeal, we examine whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled. Under this standard, if the jury charge as a whole correctly instructs the jury, even if it is technically imperfect, no reversible error has been committed. We must reverse an erroneous instruction, however, if we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.

Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1543 (11th Cir. 1996)(internal citations and quotations omitted). This Court will analyze the parties' arguments under this rubric.

The Court's jury instructions stated in pertinent part:

> The fact that a corporation is involved as a party must not affect your decision in any way. A Corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company.

(Doc. # 347 at 3).

The Court determines that it properly instructed the jury regarding agency law. The Court's general instruction, taken directly from the Eleventh Circuit's Pattern Instructions for Civil Cases, is ample in this case.

This Court "is given wide discretion as to the style and wording employed in the instructions." Bateman, 79 F.3d at 1543. This Court was not compelled by Florida law or Federal law to draft the instructions as specifically as Plaintiffs suggest. The jury was properly instructed, and no new trial is warranted on the basis of the Court's jury instructions.

**D.  Jury's Verdict and Mitigation of Damages**

Last, Plaintiffs contend that a new trial is warranted because the jury reached an inconsistent verdict. Plaintiffs argue, "The jury clearly produced an inconsistent verdict by on the one hand finding no 'wrongful act' on the part of the

Defendants which damaged the Plaintiffs, yet, on the other hand, acknowledging 'Plaintiffs' damages' in the amount of $832,100.00. (Doc. # 348 at 7)." (Doc. # 358 at 23). Plaintiffs comment that this "dichotomy is indicative of jury error, confusion, and a total misunderstanding of the jury instructions and verdict form." (Doc. # 358 at 23).

Defendants argue that Plaintiffs waived the right to object to the inconsistency in the verdict because the jury had been excused before Plaintiffs raised the issue and, in the alternative, that the inconsistency in the verdict is harmless.

The Court agrees with Plaintiffs that there is an inconsistency in the verdict as to mitigation of damages. The jury did not award Plaintiffs any damages, however, the jury determined that Plaintiffs' damages should be reduced by $832,100. The Court's jury instructions and verdict form did not specifically state that the principle of mitigation of damages only applies when damages are awarded. However, this principle is implicit in the instructions, and is a matter of common sense.

The Court determines that the jury's inconsistent finding on the verdict form regarding mitigation of damages was a harmless error. Rule 61 of the Federal Rules of Civil

17

Procedure states that "unless justice requires otherwise, no error . . . by the Court or a party . . . is ground for granting a new trial. . . . At every stage of the proceedings, the court must disregard all errors and defects that do not affect a party's substantial rights."

The jury's finding regarding mitigation of damages is completely inconsequential. There are no damages in this case. The portion of the verdict addressing mitigation of damages is superfluous and irrelevant. When the jury determined that Defendants did not harm Plaintiffs, the jury's fact finding mission concluded. The Court determines that the jury's misapplication of mitigation of damages does not affect the merits of the case or Plaintiffs' substantial rights. The Court disregards the jury's mitigation of damages finding as a harmless error by the jury. Accordingly, analysis of Defendants' waiver argument is not necessary.

### III. Conclusion

In conclusion, Plaintiffs failed to demonstrate that the jury's verdict was rendered against the great weight of the evidence, that a miscarriage of justice resulted from the jury's verdict, or that this Court's procedural and evidentiary rulings (including its jury instructions and other rulings) affected Plaintiffs' substantial rights or otherwise

caused injustice or prejudice. Accordingly, this Court will not disturb the jury's verdict and denies Plaintiffs' motion for a new trial. The Court also denies Plaintiffs' request to file a reply brief as no further analysis is needed.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiffs' motion for a new trial (Doc. # 358) is **DENIED**.

(2) Plaintiffs' motion for leave to file a reply in support of the motion for a new trial (Doc. # 367) is **DENIED.**

**DONE** and **ORDERED** in Ft. Myers, Florida, this 21st day of February, 2010.

*[Signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All counsel of record